**UNITED STATES of America, Appellee,**

v.

**Harold SCHAEFER, Defendant, Appellant.**

**No. 95–2342.**

United States Court of Appeals, First Circuit.

Heard June 6, 1996.

Decided June 25, 1996.

**564**

David H. Bownes, Laconia, NH, for appellant.

Jean B. Weld, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief, Concord, NH, for appellee.

Before SELYA, CYR and BOUDIN, Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Harold Schaefer stands convicted of growing marijuana, *see* 21 U.S.C. § 841(a)(1); possessing marijuana with intent to distribute, *see id.;* and conspiring to achieve those ends, *see id.* § 846. In this appeal, he argues that the lower court erred in denying his motion to suppress evidence seized from (a) a barn located near his house on Beech Hill Road in Winona Heights, New Hampshire, and (b) the separate residence of his estranged wife, Kathleen Schaefer, located on Winona Road in Center Harbor, New Hampshire. Discerning no error, we affirm.

## I. FACTUAL BACKGROUND

We recite the facts pertinent to this appeal as they were found by the district court, consistent with record support. *See United States v. Zapata,* 18 F.3d 971, 973 (1st Cir. 1994).

In early 1994, Susan Forey, a New Hampshire state trooper, initiated an investigation of the appellant's suspected marijuana-growing activities. After gathering evidence, interviewing a confidential informant, and speaking with several colleagues (one of whom had interviewed a second confidential informant), Forey concluded that the appellant had been cultivating cannabis in his barn. She then prepared an affidavit (which relied heavily, albeit not exclusively, on clues furnished by the informants) and sought a search warrant authorizing inspection of the barn.

A state magistrate issued the warrant on June 27, 1994. That morning a coterie of federal, state and local officers set out to execute the warrant but temporarily refrained from doing so when they could not locate the appellant. While members of the search party stood guard at Beech Hill Road, two troopers, Forey and Elizabeth D'Angelo, proceeded to Kathleen Schaefer's residence in the hope that they would find her there. Forey—without entering the dwelling—noted the distinctive aroma of marijuana wafting from within. However, when Ms. Schaefer did not answer the door, Forey departed (leaving D'Angelo to await Ms. Schaefer's appearance).

Meanwhile, back at Beech Hill Road, the Schaefers' twelve-year-old daughter, Amber, became agitated over the continued police presence and enlisted a neighbor to drive her to her mother's home in Center Harbor. When she arrived she found D'Angelo patrolling the premises. Using her own key, Amber entered the house. D'Angelo accompanied her and immediately noticed the smell of marijuana. Once inside, the pair found Ms. Schaefer, who explained that she had slept through the earlier commotion. D'Angelo asked Ms. Schaefer to accompany her to Beech Hill Road. Ms. Schaefer assented, and they repaired to that site. By then, the search party had made an initial inspection of the barn and had found some incriminating evidence.

Ms. Schaefer spoke freely with the officers, and Forey eventually asked for permission to search her dwelling. Ms. Schaefer hinted that she might seek counsel, and Forey told her that she could contact an attorney if she so desired. After pondering her options, Ms. Schaefer decided not to call a lawyer, but, instead, gave the authorities access to her abode. She asked only that the officers conduct their search discreetly so as not to alarm her neighbors. The police complied. It is worth noting that, before the search began, Ms. Schaefer forecast that the searchers would find approximately 100 cannabis plants on the premises. The forecast proved to be accurate.

Early that afternoon the appellant returned home from work. The authorities promptly placed him under arrest. The search of the barn thereafter commenced in earnest. The searchers discovered 1,126 cannabis plants, plus an elaborate array of equipment associated with the growing, preparation, and distribution of marijuana.

## II. PROCEDURAL BACKGROUND

In due season a federal grand jury charged the Schaefers with the commission of various marijuana-related offenses.[1] In addition, the government sought criminal forfeiture of the appellant's home and barn, and certain machinery used in the marijuana-growing process. *See* 21 U.S.C. § 853. The appellant moved to suppress the evidence that had been obtained during the searches. Following a hearing, the district court denied the motion. *See United States v. Schaefer*, Crim. No. 94–53–1–M (D.N.H. Dec. 30, 1994) (D.Ct.Op.).

The case proceeded to trial and a jury returned a guilty verdict. Schaefer then consented to the forfeiture and the court imposed a sixty-three month incarcerative sentence. This appeal ensued.

## III. THE BEECH HILL ROAD SEARCH

On appeal Schaefer charges that the trial court committed several errors in refusing to suppress the evidence seized from his barn. His primary asseveration is that Forey's affidavit in support of the warrant contained inadequate information to justify a finding of probable cause. This asseveration has two prongs. First, the appellant maintains that the information provided by the confidential informants was unreliable (and, therefore, unusable) because the affidavit did not set forth sufficient bases for crediting those sources. Second, the appellant maintains that much of the informants' fingerpointing was predicated on outdated information (and, therefore, unusable). The appellant insists that, if all the untrustworthy information is stripped from the affidavit, there is too little left to sustain a finding of probable cause.

### A. *Standard of Review.*

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched." U.S. Const. amend. IV. Probable cause exists when "the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it." *United States v. Aguirre*, 839 F.2d 854, 857–58 (1st Cir.1988). The magistrate issuing the warrant must look to the totality of the circumstances in order to ascertain the existence of probable cause. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *see also United States v. Figueroa*, 818 F.2d 1020, 1024 (1st Cir.1987).

This holistic approach also applies when a district court is called upon to evaluate a magistrate's determination that, based on the totality of the circumstances indicated in a supporting affidavit, probable cause exists to search particular premises. *See Aguirre*, 839 F.2d at 857–58. And the same approach holds when a reviewing tribunal is called upon to assess the district court's denial of a suppression motion that challenges such a probable cause determination. *See id.* Yet such review cannot start from scratch. "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331 (citation and internal quotation marks omitted). Moreover, on an appeal from a district court's ruling on a suppression motion, judicial scrutiny must be filtered through a second layer of deference; although the appellate court reviews the district court's ultimate legal conclusion—in this context, the existence *vel non* of probable cause—de novo, it must accept the district court's subsidiary findings of fact unless those findings are clearly erroneous.[2] *See Zapata*, 18 F.3d at 975.

---

1. Kathleen Schaefer did not contest the charges against her. She is not a party to this appeal.

2. The Court's recent decision in *Ornelas v. United States*, —— U.S. ——, 116 S.Ct. 1657, 134

## B. *Reliance on Informants.*

The appellant calumnizes Forey's heavy reliance on statements of the two confidential informants, complaining that her affidavit provides too rickety a foundation for evaluating the informants' veracity or bases of knowledge. Relatedly, the appellant suggests that the trooper did not adequately corroborate the informants' statements. Though forcefully made by able counsel, the appellant's arguments are unfounded.

The use of confidential informants in criminal investigations is commonplace. *See, e.g., United States v. Manning,* 79 F.3d 212, 220 (1st Cir.1996); *United States v. Vargas,* 931 F.2d 112, 115–16 (1st Cir.1991). The practice has been characterized as a necessary part of police work. *See Gates,* 462 U.S. at 237–38, 103 S.Ct. at 2331–32. What is more, an informant's tales need not invariably be buttressed by extensive encomia to his veracity or detailed discussions of the source of his knowledge. While an informant's truthfulness and basis of knowledge are "highly relevant in determining the value of his report," the Court has cautioned that "these elements should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case." *Id.* at 230, 103 S.Ct. at 2328.

■ Here, Forey's affidavit contains more than enough substantiation to lend credence to the confidential informants' reports. First, Forey expressly stated that CI–1 had a proven track record, and fortified this statement by attesting that, to her personal knowledge, CI–1 had assisted the police in the apprehension of another drug felon. We heretofore have held—and today reaffirm—that such an indicium of reliability may itself be sufficient to bulwark an informant's re-

port.[3] *See United States v. 5 Bell Rock Rd.,* 896 F.2d 605, 608–09 (1st Cir.1990). Second, Forey's affidavit explains that CI–2's information included declarations against penal interest. The fact that an informant's statements are against his or her penal interest adds credibility to the informant's report. *See United States v. Fields,* 72 F.3d 1200, 1214 (5th Cir.1996), *petition for cert. filed,* 64 U.S.L.W. 3709 (U.S. Apr. 8, 1996) (No. 95–1639); *Turner v. Caspari,* 38 F.3d 388, 393 (8th Cir.1994).

In addition to these badges of veracity, circumstances external to each informant's statements lend additional weight. For example, CI–2 confirmed CI–1's statement that the Schaefers were engaged in growing cannabis plants indoors in a barn located on their property. Courts often have held that consistency between the reports of two independent informants helps to validate both accounts. *See, e.g., Fields,* 72 F.3d at 1214. In a related vein, neighbors complained to the police in June of 1992 regarding the appellant's marijuana cultivation. The latter complaints enjoy special stature since information provided by ordinary citizens has particular value in the probable cause equation. *See United States v. Scalia,* 993 F.2d 984, 987 (1st Cir.1993); *United States v. Campbell,* 732 F.2d 1017, 1019 (1st Cir.1984).

There is more. Drawing on several sources, Forey's affidavit depicts the appellant as a member of a loosely-knit band of marijuana growers, known colloquially as the "sea of green" group. In an interview with CI–1, summarized in Forey's affidavit, Special Agent Gerald Graffam of the federal Drug Enforcement Administration learned the names of a number of individuals whom

---

L.Ed.2d 911 (1996), reinforces this dichotomous standard of review. In *Ornelas* the Court held, in the case of a warrantless search pursuant to the so-called "automobile exception" to the warrant requirement, that "the ultimate questions of reasonable suspicion and probable cause ... should be reviewed de novo." *Id.* at ——, 116 S.Ct. at 1659. By contrast, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at ——, 116 S.Ct. at 1663. The *Orne-*

*las* Court's holding is fully consistent with this circuit's precedent as expressed in cases like *Zapata.*

**3.** Here, moreover, Forey convincingly explained her failure to elaborate upon her comments. She stated that "[t]his affiant is personally familiar with the case in which CI–1 provided information and further detail or description of the case would likely disclose the identity of the CI." The district court found Forey to be credible on this and other points, and the appellant has advanced no sound basis for rejecting this credibility determination.

CI–1 claimed were part of the sea of green operation. The roster included the Schaefers, James Crawford, and James Spellman, to name a few. The record contains several external data (i) confirming the identities and predilections of Crawford, Spellman, and other growers in the group, (ii) pinning down Crawford's and Spellman's involvement with cannabis cultivation, and (iii) demonstrating the group's access to marijuana plants that were being grown indoors.[4]

This list of sea of green participants featured Marc Birmingham, an aide to Crawford (who had recently been arrested for growing marijuana).[5] Forey's independent investigation revealed that, before teaming up with Crawford, Birmingham had worked for a company owned by the appellant. CI–2 underscored the Schaefer/Birmingham connection, explaining to Graffam in June 1994 that Birmingham told him that his former employer "had set up a marijuana growing operation under his horse barn." Moreover, in April 1994, Birmingham told CI–2 that Crawford's group had procured "eight big plants" from his (Birmingham's) "ex-boss."

Birmingham also informed CI–2 that "his former employer sold his finished product in New York, where he was able to receive a higher price for it." CI–1 added an interlocking datum: that the appellant "was the least 'controlled' member of the group and had been arrested in New York for possession of marijuana and 'patronizing a prostitute.'" Forey confirmed that the police had arrested the appellant in Suffolk County, New York, on June 8, 1993, for criminal possession of marijuana and pandering.

Forey also attempted to verify her suspicions by inspecting the appellant's electric bills. The bills indicated a suspicious pattern of electricity usage: the appellant drew an abnormally high amount of power in October of 1993 and April of 1994—two months in which the New England climate often allows consumers a brief respite from copious use of electricity for heating or cooling. Based on Forey's substantial experience in the investigation of marijuana farming and other narcotics operations, she concluded that this pattern indicated periods of intensive cultivation.

The appellant strives to undercut this latter detail by pointing out CI–1's observation that the appellant "powers the grow operation in the barn with propane rather than electricity." The appellant argues that, if CI–1's statement is true, fluctuations in the electric bills necessarily would be meaningless. Forey herself dispelled this seeming paradox at the suppression hearing, stating that "[t]o say that you're using a secondary source of power and to say that you know how to use that are two different things," and the district court accepted her explanation. We need not pursue the point. Even were we to find a discrepancy here, our result would remain unchanged. When an informant's statements and the events he attempts to describe diverge in minor ways, the magistrate may reasonably choose to credit the statements and disregard petty inconsistencies. *See, e.g., United States v. Diallo*, 29 F.3d 23, 26 (1st Cir.1994).

To sum up, the informants' credibility and bases of knowledge are sufficiently illuminated. More importantly, Forey's affidavit is not entirely dependent upon the informants' assertions, but includes many external data fortifying those assertions. Indeed, the wealth of incriminating circumstances marshalled by Forey in her affidavit defenestrates Schaefer's allegation that the trooper did not adequately corroborate the details of the confidential informants' statements. Having carefully examined the totality of the circumstances described in the affidavit, we agree with the state magistrate and the district court that probable cause to issue the warrant existed. *See Gates*, 462 U.S. at 244–45, 103 S.Ct. at 2335 (explaining that police need only independently corroborate some of the details supplied by an informant).

---

4. Forey's affidavit also contains an account of an incident that occurred in June 1993 when a fellow state trooper, Scott Champagne, discovered marijuana plants under cultivation in the woods, in close proximity to the appellant's camper.

5. CI–2's statements confirmed CI–1's assurance that Birmingham served as Crawford's lieutenant.

## C. Staleness.

We turn now to the appellant's insistence that the magistrate should have disregarded much of the information disclosed in the affidavit because it was out of date. We agree with the appellant's premise—an affidavit supporting a search warrant must contain timely information or else it will fail—but we disagree with his conclusion that Forey's affidavit suffers from this vice.

■ In trying to make the case for staleness, the appellant points to Forey's statement that, "[i]n 1991 and 1992, CI–1 knew Harold Schaefer and his wife, Kathleen, to be involved in indoor cannabis cultivation in a barn on their property." Building on this introduction, he posits that CI–1's knowledge of his activities went back two to three years, and, therefore, was old hat. But courts confronting suppression motions do not measure the timeliness of collected information mechanistically, merely counting the number of days elapsed. See United States v. Bucuvalas, 970 F.2d 937, 940 (1st Cir.1992), cert. denied, 507 U.S. 959, 113 S.Ct. 1382, 122 L.Ed.2d 758 (1993). Rather, a number of integers must be factored into the calculus— e.g., the nature of the information, the nature and characteristics of the supposed criminal activity, the nature and characteristics of the place to be searched, the nature of the items delineated in the warrant—and the likely endurance of the information must be gauged on that basis. See id.; see also United States v. Moscatiello, 771 F.2d 589, 597 (1st Cir.1985), vacated on other grounds, 476 U.S. 1138, 106 S.Ct. 2241, 90 L.Ed.2d 688 (1986). The longer the expected duration of the criminal activity and the longer the expected life of the items attendant to it, the more likely that a datum from the seemingly distant past will be relevant to a current investigation.

■ In this case, all signs point to ongoing and entrenched activity. CI–1 told Forey that the appellant built his barn as a haven for his illicit marijuana-growing enterprise. Both informants expressed their belief that the appellant was a major player in a long-term cartel that involved several independent marijuana growers. The warrant did not target items of transient existence, but, rather, featured chattels of relatively dear value and solid construction (including hardware commonly used in the growing and distribution of marijuana), likely to be in service for several years. Since these items possessed enduring worth and utility, information that might be considered ancient history in considering the probable whereabouts of more transient goods would be timely here. See United States v. McKeever, 5 F.3d 863, 866 (5th Cir.1993) (holding that information need not be as current when the items to be seized include hydroponic marijuana-growing apparatuses); United States v. Sturmoski, 971 F.2d 452, 457 (10th Cir.1992) (holding to like effect regarding laboratory equipment for the production of methamphetamine).

Then, too, the troopers proposed to search the appellant's own barn, not a rented or appropriated facility that could easily be used and then abandoned. The target's ownership of the real estate to be searched influences the staleness calculus. See Bucuvalas, 970 F.2d at 941 (explaining that information is more likely to be timely when it concerns items stored at a permanent locus). Finally, it is common ground that drug conspiracies tend to be ongoing operations, rendering timely information that might, in other contexts, be regarded as stale. See United States v. Nocella, 849 F.2d 33, 40 (1st Cir. 1988). In cumulation, these factors make us hesitant to characterize the challenged information, even if it is not of very recent vintage, as stale.

We need not dwell on this subject, however, since the appellant's argument fails for an even more abecedarian reason. When an affidavit tendered in support of a warrant application contains information that is remote in time, a magistrate may still hold it to be adequate if it also contains sufficient recent facts corroborating the older data and linking that data to the present. See id. at 39–40. Here, the affidavit cited the appellant's transfer of marijuana plants to Crawford's entourage in April of 1994 (approximately two months before the warrant issued), and, moreover, Forey's probe of utility company records indicated the appellant's excessive use of electricity in the spring of 1994. These recent details bear

out the appellant's earlier connections with marijuana growing, thus rendering the affidavit temporally adequate.

## IV. THE WINONA ROAD SEARCH

■ The appellant also challenges the warrantless search of his wife's residence. It is settled that an individual may waive the warrant requirement of the Fourth Amendment by consenting to a search of her person, property, or effects, as long as the individual's consent is freely and voluntarily given. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *Zapata*, 18 F.3d at 977. Citing this caselaw, the government asserts that Kathleen Schaefer consented to the search of her home.

The chronology of events is important. After Schaefer lodged his suppression motion, the government filed a written opposition. Attached to the opposition (and incorporated by reference therein) were two key documents: (1) a copy of Forey's report of her investigation concerning, *inter alia*, the events of June 27, 1994, and (2) a copy of the affidavit that Forey submitted to the magistrate in conjunction with her request for a search warrant. Judge McAuliffe heard arguments regarding the suppression motion on two separate dates in December of 1994, and conducted a proceeding (partially in camera) in which both Forey and CI–1 were questioned. At the close of the second day, the judge denied the appellant's motion for a *Franks* hearing, *see Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978), and added from the bench that "to the extent we've had a de facto *Franks* hearing I find Trooper Forey to be entirely credible and I find that she did not include any false statement or omission in her affidavit with regard to the statements made by

confidential informant No. 1." [6] Shortly thereafter, the court handed down a written order in which it denied the appellant's motion to suppress. *See* D. Ct. Op. at 12.

■ The government bears the burden of proving by a preponderance of the evidence that an individual consented to a search of her person, property, or effects. *See United States v. Matlock*, 415 U.S. 164, 177, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974). Before us, the appellant challenges the Winona Road search on the ground that the government adduced no evidence of consent. The relevant particulars follow. The suppression motion cited the absence of a warrant as a ground for invalidating the Winona Road search, and the government's opposition parried this thrust by asserting that Ms. Schaefer had consented to the search. Withal, the issue was not the subject of any testimony or argumentation at the suppression hearing itself. The only record evidence of consent is Forey's account of her conversation with Ms. Schaefer (set out in the police report). Judge McAuliffe addressed the matter briefly in his written order. He found, consistent with the police report,[7] that "Ms. Schaefer agreed to allow the troopers to return to her home and search it," D. Ct. Op. at 3, and concluded that "[t]he search of the Winona Road property was conducted only *after* Kathleen Schaefer gave express consent to the search," *id.* at 9.

The appellant argues that the report was not properly before the district court at the suppression hearing, and that, in the absence of any other proof of consent, the district court's finding is plucked out of thin air. Hence, the pivotal question is whether the district court appropriately considered the police report.[8] We believe that it did.

6. Though one thrust of Schaefer's argument below focused on what he termed "material misrepresentations" in Forey's affidavit, he does not renew that claim on appeal.

7. The police report comprised Forey's report on the investigation into the appellant's marijuana growing activities. The report recounted extended negotiations with Ms. Schaefer anent the proposed search, culminating in Ms. Schaefer's informed consent to it.

8. Because the appellant does not argue that Forey's account, if properly considered by the district court, was insufficient to show the requisite consent, he has for all intents and purposes conceded that point. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) (admonishing that matters neither briefed nor argued are waived), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

We begin with bedrock. Although a suppression hearing may be of decretory significance in a given case, it is generally true that "the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself." *United States v. Raddatz*, 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980). Thus, apart from questions of privilege, the Federal Rules of Evidence do not apply at suppression hearings. *See Matlock*, 415 U.S. at 172–74, 94 S.Ct. at 993–95; *see also* Fed.R.Evid. 104(a) (explaining that the court is "not bound by the rules of evidence except those with respect to privileges," in deciding "[p]reliminary questions concerning ... the admissibility of evidence") & 1101(d)(1) (declaring the Evidence Rules inapplicable to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court").

Consequently, a judge presiding at a suppression hearing may receive and consider any relevant evidence, including affidavits and unsworn documents that bear indicia of reliability. *See United States v. Lee*, 541 F.2d 1145, 1146 (5th Cir.1976). Consistent with this praxis, a judge may receive hearsay evidence at a suppression hearing. *See, e.g., Raddatz*, 447 U.S. at 679, 100 S.Ct. at 2414; *United States v. Merritt*, 695 F.2d 1263, 1269 (10th Cir.1982); *United States v. Ocampo*, 650 F.2d 421, 427 (2d Cir.1981); *United States v. Bolin*, 514 F.2d 554, 557 (7th Cir. 1975).

Here, the suppression hearing itself concentrated on only a few of the many issues raised by the appellant's motion. It did not focus at all on the Winona Road search, and it is apparent to even a casual observer that the district court—with the parties' tacit acquiescence—intended to decide that aspect of the motion on the papers. In implementing this intention, the court obviously accepted and relied upon the government's proffer of the police report. In the absence of a motion to strike—and the appellant made none—the court was entitled to do so. Put another way, the government effected a prima facie showing of consent by placing a copy of the police report before the court, *see United States v. Barnes*, 443 F.Supp. 137, 139 (S.D.N.Y.1977); and since the appellant (who cross-examined Forey but shied away from questioning her about the Winona Road search) adduced no evidence that impeached or contradicted the trooper's account of the manner in which she obtained Ms. Schaefer's consent, the court could properly base a finding on that account.[9] *See, e.g., Zapata*, 18 F.3d at 977 (affirming the trial court's inference of consent in the absence of contrary factual evidence); *cf. United States v. McKneely*, 6 F.3d 1447, 1453 (10th Cir.1993) (rejecting as clearly erroneous a finding of coerced consent under circumstances in which the government's evidence of the defendant's voluntary consent was "uncontroverted by facts because defendants offered no testimony to the contrary").

## V. CONCLUSION

We need go no further.[10] Because the lower court appropriately refused to suppress the inculpatory evidence that the government's lawful searches had amassed, the judgment below must be

*Affirmed.*

---

9. The appellant claims unfair surprise, saying in effect that he was unaware that the court would consider the police report. But if the appellant labored under that mistaken assumption at all, his reverie surely did not survive his receipt of the district court's rescript. That was the time for appellant to claim surprise and, concomitantly, to move either to reopen the proceedings or for reconsideration. The failure to file any such motion below undercuts the claim of surprise that he mounts in this venue. *Cf. United States v. Diaz–Villafane*, 874 F.2d 43, 47 (1st Cir.) (finding the defendant's claim of surprise at sentencing

"severely undermined, if not entirely undone, by his neglect [to take appropriate corrective action in the trial court]"), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

10. Inasmuch as we uphold the district court's finding that Ms. Schaefer consented to the Winona Road search, we express no opinion on the government's alternative argument that the appellant lacked an expectation of privacy in his estranged wife's residence and therefore lacked standing to contest the search of those premises.