[NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]

# United States Court of Appeals
## For the First Circuit

―――――――――

No. 99-1965

UNITED STATES,

Appellee,

v.

VINCENT E. MANN,

Defendant, Appellant.

―――――――――

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Paul J. Barbadoro, U.S. District Judge]

―――――――――

Before

Torruella, Chief Judge,
Coffin, Senior Circuit Judge,
and Stahl, Circuit Judge.

―――――――――

George J. West for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, and Stephanie S. Browne, Assistant United States Attorney, were on brief for the United States.

―――――――――

June 2, 2000

―――――――――

**STAHL, Circuit Judge**. Defendant-appellant Vincent Mann appeals an order denying his motion to suppress crack cocaine police seized from him at the time of his arrest. Finding no Fourth Amendment violation, we affirm.

**I.**

Detective Joseph Colanduono first heard about Vincent Mann when he arrested several individuals on drug charges in February 1998. After their arrest, some of these individuals, as well as some tenants of the housing project in which they were arrested, told Colanduono about "Vincent," who they claimed was supplying drugs to dealers in the Lockwood Plaza area of Providence, Rhode Island. They also provided Colanduono with a physical description of Vincent and told him Vincent drove a white Buick Century. Subsequently, Colanduono sought information about Vincent from a Lockwood Plaza housing project security guard. The guard said he was familiar with Vincent and agreed to call Colanduono if and when he saw Vincent in the area. Sometime later the guard saw the Buick, called Colanduono, who came to the project, and pointed out Vincent to him.

Colanduono then began surveilling Lockwood Plaza. On two occasions, he observed Vincent speaking with others in another area known to the Providence police as a frequent site of drug trafficking. Colanduono also observed Vincent driving a white Buick Century. At

some point, he identified Vincent for his partner, Detective Gregory Sion.

On February 16, 1998, a confidential informant[1] phoned Colanduono and told him that Vincent would be dropping off a large supply of cocaine in the Loungo Square area of Providence later that evening. The informant described Vincent's white Buick Century and gave Colanduono its license plate number. Colanduono considered this informant to be a good source because on several prior occasions he had provided Colanduono with reliable information. Moreover, at least one of the informant's prior tips had led to the arrest and conviction of a drug dealer.

As a result of this call, Colanduono and Sion set up surveillance in the Loungo Square area. At around 10:30 p.m., they observed a white Buick Century with a license plate number matching the one the informant had provided. Colanduono and Sion recognized Mann, the driver, as the person previously identified as Vincent. The vehicle made a U-turn and came to a stop in front of a residence. Mann then honked the vehicle's horn, which the officers, based on their experience, believed was a signal of his arrival to his buyer.

---

[1]Mann makes much of the fact that the police report listed this informant as "anonymous" and argues that the district court erred "in determining that the police were in fact relying on a confidential informant." The district court's inquiry into whether the informant was anonymous or not was sufficiently thorough. Given the record, its decision to regard the informant as a confidential source known to the police was not clearly erroneous.

Two other detectives and one uniformed officer were parked in two cars near Colanduono and Sion.  When Colanduono gave a signal, the three police cars converged to block-in Mann's car.  While Mann remained in the driver's seat, Colanduono approached him on the passenger's side, and Sion approached him on the driver's side.  As Sion approached, he observed Mann stuff a large object into his pants.  Sion immediately drew his gun and warned Colanduono of Mann's actions.  Sion told Mann to place his hands in the air.  Mann complied, and Sion holstered his weapon.

Sion opened the car door and removed Mann from the car.  He placed one hand on Mann's shoulder to prevent his flight and placed the other on Mann's pants where he had seen Mann hide the object.  Sion felt "a hard, rock-like substance all together in one big ball," which he believed, based on his training and experience, to be crack cocaine.  Sion reached into Mann's pants and pulled out the object, which turned out to be a large quantity of crack cocaine wrapped in a plastic bag.  Upon discovering the crack, the police placed Mann under arrest and handcuffed him.

A federal grand jury indicted Mann for possession of cocaine with intent to sell, in violation of 21 U.S.C. § 841(a)(1).  Mann filed a motion to suppress the cocaine the police seized from his pants.  The district court denied the motion, ruling that the police were justified in stopping Mann because they had a reasonable suspicion that he was

about to engage in criminal activity.  See  Terry v. Ohio, 392 U.S. 1, 30 (1968).  In the district court's view, the nature of the criminal conduct under investigation, as well as the time of night, justified a police frisk for weapons.  And the frisk, which revealed the hard lump, gave Sion probable cause to believe that Mann was in possession of crack cocaine.  In the alternative, the district court reasoned that Sion had probable cause to arrest Mann when he frisked him and felt what he believed to be crack.  The seizure of the cocaine thus was entirely the proper product of a search incident to arrest.

Mann pled guilty pursuant to a plea agreement in which he reserved the right to challenge the denial of the suppression motion on appeal.  He does so here.

**II.**

We review de novo the district court's probable cause determinations, but "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts." Ornelas v. United States, 517 U.S. 690, 699 (1996); see also United States v. McCarthy, 77 F.3d 522, 525 (1st Cir. 1996).  Where the district court did not make specific findings, "we view the record in the light most favorable to the ruling." McCarthy, 77 F.3d at 525.

Mann contends that when the police surrounded his car and approached him, he was under de facto arrest, which would be improper

-6-

absent a showing of probable cause.  He also argues that the police did not have the requisite probable cause to support such an arrest. Despite circuit precedent suggesting that a stop such as this is not a de facto arrest, see, e.g., United States v. Quinn, 815 F.2d 153, 157 n.2 (1st Cir. 1987), we will assume arguendo that Mann was under arrest and determine whether the police had the requisite probable cause to make such an arrest.  In so doing, we affirm the district court's decision, but on somewhat different grounds.  See United States v. Paulino, 13 F.3d 20, 24 (1st Cir. 1994) (noting that appellate courts may affirm a judgement based on any grounds manifest in the record).

The police do not need a warrant to arrest a person in public if there is "probable cause to believe that the suspect has committed or is committing a crime." United States v. Martinez-Molina, 64 F.3d 719, 726 (1st Cir. 1995).  The relevant inquiry is "not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." United States v. Watson, 423 U.S. 411, 417 (1976).

To establish probable cause, the government must demonstrate that "at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." United States v. Cleveland, 106 F.3d 1056, 1060 (1st Cir. 1997), aff'd sub nom. Muscarello v. United States, 524 U.S. 125 (1998).

"The probable cause standard does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists need only be reasonable." United States v. Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999). Probable cause is determined by looking to the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 230 (1983). In this sense, "probable cause is a fluid concept" that cannot be reduced to a specific set of legal rules. Id. at 232. The government, however, may not rely on evidence recovered from the suspect during or after the arrest to establish probable cause for that arrest. See United States v. Bizier, 111 F.3d 214, 217 (1st Cir. 1997).

The government had probable cause to arrest Mann. The arrestees who spoke with Colanduono identified "Vincent" as a mid-level drug dealer. The tenants in the Lockwood Plaza housing project supplied Colanduono with the same information about Vincent. Their participation weighs heavily in our analysis. See United States v. Schaefer, 87 F.3d 562, 566 (1st Cir. 1996) ("[I]nformation provided by ordinary citizens has particular value in the probable cause equation."). Colanduono spoke with a security guard who pointed out Vincent and gave details about his car. The police twice had viewed Vincent consorting with known drug dealers. A confidential informant, who in the past had provided Colanduono with reliable information, reported that Vincent would arrive in Loungo Square to sell cocaine.

The officers watched Vincent arrive in the Loungo Square area in the car identified by both the informant and the security guard. The officers witnessed Vincent honk his horn, which they suspected, given their experience in such matters, was a signal to a drug buyer that Vincent had arrived. Because under the totality of the circumstances the police reasonably could have believed that Vincent was about to commit an offense, they had probable cause to arrest him. See, e.g., United States v. Diallo, 29 F.3d 23, 26 (1st Cir. 1994) (finding probable cause was supported by an uncorroborated but accurate tip from an informant known to be reliable).

Mann suggests that the officers improperly relied on the informant because they failed to corroborate the information the tipster provided. But the police already had observed activities and received information that corroborated the tipster's information. Moreover, complete corroboration is not always necessary for an informant's tip to support probable cause. See id. ("[U]nder the standard enunciated in Gates, the police do not have to corroborate every detail of the informant's tip."). In Gates, the Supreme Court abandoned the stringent "two-pronged test" that it previously had established to evaluate an informant's veracity or reliability and the basis of his knowledge. See Gates, 462 U.S. at 238 (rejecting the mechanical formula specified in Spinelli v. United States, 393 U.S. 410, 415-16 (1969), and Aguilar v. Texas, 378 U.S. 108, 114 (1964)).

Now, "an informant's tales need not invariably be buttressed by extensive encomia to his veracity or detailed discussions of the source of his knowledge." Schaefer, 87 F.3d at 566. Colanduono testified that his confidential informant had been a reliable source in the past with one prior tip leading to a conviction. In addition, the tip was replete with details that indicated a basis of knowledge. See Diallo, 29 F.3d at 26 (finding sufficient detail when a tipster "correctly reported the location of the three men, the type of car that [they] would be driving and that the three men would be traveling together that night" even though the tipster incorrectly "stated that there would be three men in a red Toyota when in actuality there were four men in two cars").

It is well settled that once police are authorized to make a lawful arrest, they may conduct a warrantless search of the arrestee. See United States v. Robinson, 414 U.S. 218, 234 (1973); Bizier, 111 F.3d at 217. "The justification or reason for the authority to search incident to a lawful arrest rests [both] on the need to disarm the suspect in order to take him into custody [and] on the need to preserve evidence on his person for later use at trial." Robinson, 414 U.S. at 234.

Mann contends the officers had no justification for their search incident to his arrest because they were in no appreciable fear for their safety. Mann argues that because Sion grabbed his pants as

he pulled Mann from the car, he conducted an illegal warrantless search.  We do not agree.  As long as the arrest is supported by probable cause, the search incident to that arrest is reasonable.  See New York v. Belton, 453 U.S. 454, 461 (1981) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."); see also United States v. Doward, 41 F.3d 789, 793 (1st Cir. 1994) (noting that "Belton leaves no doubt that post hoc analyses like those presently urged by [the defendant] are precluded").

### III.

For the foregoing reasons, we **affirm** the decision of the district court.