GRIFFIN, Circuit Judge,
concurring in part, and dissenting in part.
I join in Section II.B. of the majority opinion and in the result of Section III.C. However, I disagree with the statement of facts (Section I) and respectfully dissent with regard to Section II.A. Based on the present record, I would hold that the district court clearly erred in its ruling on defendant’s third motion to suppress the evidence found in the closed containers. Accordingly, I respectfully concur in part and dissent in part. I would remand for further proceedings.
I.
On June 10, 2004, defendant first moved to suppress the evidence discovered in the closed containers stored in James White’s barn. At a hearing held on July 15, 2004, the district court engaged in a colloquy with counsel, but rendered no findings of fact. An order summarily denying the motion to suppress was entered July 15, 2004.
Defendant’s second motion to suppress was filed October 29, 2004. At the conclusion of a hearing held December 13, 2004, the court denied the motion, ruling as follows:
I have heard nothing to indicate that Mr. White didn’t give his permission for these officers to look through that stuff. Mr. White clearly had as much right to access to that. It was not under lock and key. It was just left there. Yeah, granted they hid it, according to Mr. Kellogg, to keep the children from getting in it. But that doesn’t mean that Mr. White couldn’t have gotten in it. He knew where it was, knew exactly where it was. And he showed the officers and said that they could look at it. Like I said the first time, I don’t see there is any problem with him giving consent to look at that stuff.
Once they have a right to find stuff that is incriminating, they have got a right to seize it and anything that looks like it might have incriminating evidence, including hard drives, computer disks and other things. So that seizure doesn’t bother me at all.
(Emphasis added.)
Defendant’s third motion to suppress was filed May 6, 2005. Although a hearing was originally scheduled, the court cancelled the hearing, and in a written opinion and order dated May 20, 2005, *105 denied defendant’s motion. In opposition to defendant’s third motion to suppress, the government filed an unsworn written statement of Detective Ann Gutierrez dated May 18, 2005. The statement was not an affidavit, and Gutierrez was not under oath when she wrote “I declare under the penalty of perjury that the statements set forth below are true and correct to the best of my knowledge.” Detective Gutierrez’s unsworn declaration attached as Exhibit B an unauthenticated transcript of a recorded telephone conversation she purportedly had with James White on November 9, 2004. Kellogg was not afforded an opportunity to respond or rebut these hearsay statements filed by the government only two days before the court’s May 20, 2005, order.
In denying defendant’s motion to suppress, the district court relied upon this unsworn, unauthenticated transcript that was apparently transcribed by the police. Rejecting defendant’s motion, the court stated the following in its May 20, 2005, written order:
First, as to the evidence seized at the White Farm, the Court finds that the property owner, Mr. White, provided the police with valid consent to search the barn on Mr. White’s property. (Pl.’s Resp. to First Mot. to Suppress, Ex. A.) The defendant did not present any credible evidence that Mr. White was coerced into signing the consent form, other than mere speculation that it occurred. The government, on the other hand, presented evidence that Mr. White did not permit the defendant to store items on the property, other than his vehicle. (Pl.’s Resp. to Third Mot. to Suppress, Ex. A.) Thus, the Court finds that the defendant had no reasonable expectation of privacy as to the evidence seized at the White Farm. As such, the defendant may not contest the search of the White Farm. United States v. Gillis, 358 F.3d 386, 391 (6th Cir.2004).
The majority inaccurately states: ‘White denied that he had given Kellogg permission to use the barn as a storage facility.” However, White’s statement, when viewed literally, means the opposite. At a minimum, it is ambiguous. The telephone transcript states, in pertinent part, the following:
Gutierrez: Ok. Ok. I had spoken recently ... the case is actually getting ready to go to trial, we’re hoping this month. So, we’re just trying to touch base with everybody again and make sure that, kind of everything’s, the facts are all straight. And we had heard that there were some things that were being presented that were slightly different from the way I remember it. So I wanted to touch base with you. When all of that happened, were you aware that there were things being stored on your farm?
White: No, ma’am. Like I said, things that were being stared there, he did not have my permission to put there.
Gutierrez: Ok. They’re presenting a document to the court that’s saying that you were allowing him to store things. So that is not true?
White: No.
(Emphasis added.)
White’s answer of “No” can be construed as stating that he did not allow Kellogg to store personal property on his premises only if his answer of “No” is deemed as a “Yes.” The question was, “So that [Kellogg’s statement] is not true?” The answer of “No” literally means that it was true, and, therefore, he allowed Kellogg to store “things” on his premises.
In addition, the questions and answers are ambiguous. White was not asked whether he had granted permission to Kel *106 logg to use the barn as a storage facility. Rather, he was asked whether he was “aware that there were things being stored on your farm?” (Emphasis added.) White’s answer can reasonably be interpreted to mean that he never granted Kellogg the right to store illegal “things” on his property, such as child pornography or guns. However, from the question and answer, it is unclear whether "White granted permission for Kellogg to store legal items on the property.
Further questions and answers suggest that the consent "White refused to give pertained to “weapons” and “stuff like that”:
White: I allowed him to go out to my farm and work on his vehicle. He came out there, and like I said, I had no idea what was going on behind the scenes.
Gutierrez: Ok.
White: Like I said, you know, he, stayed home from work. He said, “Hey, my car’s broke down.” I said, ‘Yeah, go down there and make yourself at home.” Because, you know, he is a co-worker, twenty years retired from the Marines.
Gutierrez: Yeah. Yeah.
White: You know, had to have a security clearance to work where we work.
Gutierrez: Right.
White: Never dreamed of anything like that. So ...
Gutierrez: Ok. Ok. So he was going to work on his car. And as far as you knew, that was it.
White: Right. Like I said, when you guys went down there we found, weapons
Gutierrez: Right.
White: And stuff like that. Yeah.
Gutierrez: And you had no idea that any idea that any of that [weapons and “stuff like that”] was, was there at the time?
White: No, ma’am.
(Emphasis added.)
When reviewing the denial of a motion to suppress evidence, we consider the evidence in the light most likely to support the district court’s decision. United States v. Dillard, 438 F.3d 675, 680 (6th Cir.2006), cert. denied, — U.S. -, 127 S.Ct. 291, 166 L.Ed.2d 222 (U.S.2006). Further, we will not reverse the factual findings by the district court unless such factual findings are clearly erroneous. Id. For purposes of a suppression hearing, a district court may rely on hearsay evidence, but only if the evidence is “credible and competent.” Fields v. Bagley, 275 F.3d 478, 485 n. 5 (6th Cir.2001). Moreover, the probative value of unauthenticated hearsay evidence is diminished by its lack of reliability. See generally United States v. Matlock, 415 U.S. 164, 175-77, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (reliable hearsay is admissible on motions to suppress); United States v. Merritt, 695 F.2d 1263, 1270 (10th Cir.1982) (considering factors of reliability and corroboration); United States v. Schaefer, 87 F.3d 562, 570 (1st Cir.1996) (“[A] judge presiding at a suppression hearing may receive and consider any relevant evidence, including affidavits and unsworn documents that bear indicia of reliability. ”) (emphasis added); John W. Strong et al., McCormick on Evidence § 353 (4th ed.1992) (evaluating hearsay evidence in administrative proceedings).
"While the trial court is the primary judge of the credibility of witnesses, here, the district judge did not rely on live testimony or the demeanor of any witness in ruling that White had not granted Kellogg permission to store personal property on the premises. Rather, the court relied heavily on an unsworn, unauthenticated *107 transcript of a conversation White allegedly had with Detective Gutierrez. When viewed literally, White’s statement supports defendant’s position that he had been granted permission to store personal property on the premises. At a minimum, White’s statement is ambiguous. Furthermore, it appears that the district court’s findings of fact with regard to defendant’s second and third motions to suppress are contradictory. In particular, if White helped Kellogg hide the containers and knew where they were, it is reasonable to infer that he granted Kellogg permission to store the containers.
At oral argument, defense counsel represented to the court that White had been subpoenaed for the suppression hearings but failed to attend. The government’s telephone transcript is unclear whether the subpoenas issued for White were for the suppression hearings, trial, or both:
White: Never have spoke with them [defense counsel]. Like I say, I got that letter back in July of this year.
Gutierrez: Ok.
White: And I have been, I don’t know how many times I have been served a subpoena ...
Gutierrez: Yeah.
White: To show up in court and it get postponed.
The November 9, 2004, telephone conversation occurred after the first July 15, 2004, suppression hearing but before the second December 13, 2004, hearing. The district court’s December 13, 2004, order denying defendant’s second motion to suppress provides: “The defendant’s oral motion for the Clerk to reissue subpoenas for January 13, 2005, at 9:00 a.m. is hereby GRANTED and the clerk shall reissue the defendant’s subpoenas for the new trial date.”
Regarding the subpoenas, I find it noteworthy that, in the telephone interview, White advised Detective Gutierrez that he had “a problem” complying with them because of his new job in Huntsville, Alabama:
White: Now, now I got, I got a problem.
Gutierrez: Ok.
White: I got a new job in Huntsville, Alabama.
Gutierrez: Ok.
White: You know, I don’t have the luxury of getting time off and everything.
Gutierrez: Sure. Well, it was funny because when we stopped past your house we saw the signs that you all were trying to sell. And, I thought, oh, shoot ... I hope we didn’t completely miss you. And then your son said, “Well, he’s moving ... you know he’s working down there, but he comes home on the weekends.” And I thought, Oh, shoot ... he’s is [sic] just
White: (Unin)
Gutierrez: I’ll tell you what. I will, I will pass that information on to the prosecutor and make sure that he understands that you are in Huntsville and ...
White: Yeah. I’m, I’m down here working full time.
In summary, I conclude that the district court clearly erred in placing great weight on the unsworn, unauthenticated, and ambiguous statements allegedly made by James White to Detective Gutierrez. Despite our deferential standard of review, the present record does not contain reliable evidence supporting the ruling of the district court. For this reason, I would remand for further proceedings.
*108 II.
With regard to the search of the Lexington storage facility, I agree with the majority that, even without the contested evidence discovered in the barn, sufficient probable cause existed for the issuance of the search warrant. Furthermore, I agree with the learned district judge that the good faith exception of Leon applies and validates the search. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Finally, I join in Section II.B. of the majority opinion rejecting defendant’s Fifth Amendment claim of a Miranda violation.
For these reasons, I respectfully concur in part and dissent in part. I would remand for further proceedings.