Alton MOSS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 27A04–0805–CR–257.

Court of Appeals of Indiana.

Feb. 5, 2009.

Transfer Denied April 23, 2009.

Bruce N. Elliott, Joe Keith Lewis, Marion, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Alton Moss (Moss), brings this interlocutory appeal of the trial court's denial of his motion to suppress evidence in a prosecution against him for felony murder, Ind.Code § 35–42–1–1(2), and conspiracy to commit robbery while armed with a deadly weapon, a Class B felony, I.C. §§ 35–41–5–2, 35–42–5–1.

We affirm and remand.[1]

### ISSUE

Moss presents three issues for our review, which we restate as the following single issue: Whether the trial court's denial of Moss' motion to suppress was supported by sufficient evidence.

### FACTS AND PROCEDURAL HISTORY[2]

On January 16, 2003, Jamie Smith (Smith) was shot dead in his home in Grant County, Indiana. Eyewitnesses said that two black males had entered Smith's house and that the shooting occurred while Smith was struggling with one of them. When a photo array was shown to different witnesses, Moss' name was "brought up" as a person who was inside Smith's house at the time of the crimes. (Transcript p. 118). Moss became a suspect, but he was not arrested or charged at that time. In August of 2003, a Grant County jail inmate told Marion, Indiana, police that Moss[3] had confessed to killing Smith while attempting to rob him of marijuana. Furthermore, in 2005,

---

1. We note that Moss' appellate attorneys have reproduced the entire transcript and the entire exhibit volume in their appellate appendix. Suffice it to say, we do not need two identical copies of the record in order to perform our review. We refer counsel to Indiana Appellate Rule 50, which describes the proper contents of an appendix, including, among other things, only those portions of the transcript and exhibits that are relevant to the issues on appeal.

2. Some of these facts are taken from the trial court's Findings and Order Following Supplemental Proceedings Held on April 2, 2008. Neither party challenges the trial court's statement of the relevant facts.

3. The inmate actually said that a person called "L'il Man" had made the confession, but Moss does not dispute that his nickname is "L'il Man."

Howard Johnson (Johnson), the father of Moss' ex-girlfriend (the grandfather of one of Moss' children), told Marion police that Moss had made incriminating statements about the Smith killing and had said that he was trying to protect his brother, Logan Brown (Brown).

On the morning of August 11, 2006, Moss' fiancée, Kaitlyn McCracken (McCracken), was being interviewed by Howard County Sheriff's Department Detective Ernest Shirey (Detective Shirey) with regard to the alleged burning of one of her and Moss' vehicles. After five or ten minutes, Detective Shirey changed the subject to an investigation of Moss' involvement in the Smith murder. McCracken told Detective Shirey that Moss had told her that he and Brown had been involved in an attempt to steal drugs from a man, during which Brown struggled with the man and the man was shot and killed. Based on what Moss told her, McCracken had gotten the impression that Moss had done the shooting.

Other officers who were monitoring Detective Shirey's interview with McCracken determined that Moss had an outstanding body attachment from a civil case in Howard County, Indiana. At the end of her interview, McCracken called Moss in order to help police take him into custody. After giving her statement and assisting the officers, McCracken left the sheriff's department.

Moss was arrested at 11:45 a.m. on the basis of the Howard County body attachment, and he was booked into the Howard County jail at 2:10 p.m. He was told that the body attachment provided for a cash bond of $500. What Moss was not told was that he also had an outstanding body attachment for a different civil matter in Grant County, which also called for a $500

cash bond. The Grant County body attachment had been faxed to Howard County at 1:34 p.m., thereby placing a "hold" on Moss. (Tr. p. 102).

At some point while Moss was being processed, McCracken called the jail and was advised of the $500 Howard County body attachment bond. She, like Moss, was not told about the Grant County body attachment and bond. Between 2:15 and 2:30 p.m., before detectives began interrogating Moss, McCracken arrived at the jail with $500 to pay Moss' Howard County bond. Detective Shirey told McCracken that she "couldnt" post bond and that she "shouldn't waste her money." (Appellant's App. p. 168A). McCracken left the jail without posting Moss' bond.

No one told Moss that McCracken had been at the jail and was ready to pay the Howard County bond. At 3:05 p.m., Moss signed a waiver of his *Miranda*[4] rights. At 3:21 p.m., Detective Shirey and Sergeant Eric Randle of the Marion Police Department (Sergeant Randle) began their interrogation of Moss. Detective Shirey told Moss about his earlier interview with McCracken. Moss asked several times throughout the interview to speak with McCracken, but those requests were denied. Eventually, Moss admitted that he "was around" at the time of Smith's killing. (Appellant's App. p. 443). After narrating his version of what happened at Smith's house (he claimed that he merely rode along with Brown when Brown went to Smith's house to take something and that Brown accidentally shot Smith), Moss asked, "Okay but if I make bond they still won't let me out, right?" (Appellant's App. p. 478). Sergeant Randle replied, "We haven't made that decision yet." (Appellant's App. p. 478). Other than that, Moss said nothing else about paying bond. On

---

**4.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *reh'g denied.*

August 12 and 13, 2006, Moss gave two additional statements regarding his involvement in the crimes against Smith.

On August 14, 2006, the Grant County prosecutor filed an Information charging Moss with Count I, felony murder, I.C. § 35–42–1–1(2), and Count II, conspiracy to commit robbery while armed with a deadly weapon, a Class B felony, I.C. §§ 35–41–5–2, 35–42–5–1.[5] Moss was transported from the Howard County jail to the Grant County jail, and, on August 16, 2006, the Grant County body attachment was served on him.

On March 26, 2008, Moss filed a motion to suppress the statements he had given authorities on August 11–13, 2006, along with a statement by Brown from August 12, 2006. Moss argued: (1) that his statements were given during an illegal detention, making them "the fruit of the poisonous tree"; (2) that he gave his statements involuntarily; and (3) that Miranda violations made his statements inadmissible. On March 31, 2008, the trial court held a hearing and denied the motion. The next day, April 1, 2008, Moss filed a motion asking the trial court to certify its order for interlocutory appeal. During a brief hearing on the matter, the trial court granted Moss' motion, but only as to the first ground stated in Moss' motion to suppress: the legality of his detention.[6]

Though the trial court had already denied Moss' motion to suppress and certified its order for interlocutory appeal, the parties agreed to reconvene for the purpose of supplementing the record to "give

the Court of Appeals possibly more information to help them make a decision." (Tr. p. 177). The next day, April 2, 2008, the parties did just that. McCracken and Detective Shirey provided additional testimony. On April 7, 2008, the trial court issued its Findings and Order Following Supplemental Proceedings Held on April 2, 2008. The court reaffirmed its denial of Moss' motion to suppress. Specifically, the trial court concluded that Moss' continued detention beyond McCracken's attempt to post the Howard County bond was "still permissible as a 'hold' still existed from Grant County and no effort was made to post the Grant County bond prior to Moss' questioning." (Appellant's App. p. 169). The trial court also reaffirmed its order certifying an interlocutory appeal. On May 1, 2008, Moss filed a motion asking this court to accept jurisdiction over the interlocutory appeal. On May 20, 2008, we granted Moss' motion.

Moss now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

On appeal, Moss argues that the trial court should have granted his motion to suppress because, at the time of his initial incriminating statement, he was being illegally detained, in violation of his rights under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. Our review of the denial of a motion to suppress is similar to other sufficiency matters. *Caraway v. State*, 891 N.E.2d

5. The heading for Count II in the Information provides that Moss was being charged with conspiracy to commit robbery resulting in bodily injury, but the text of Count II alleges conspiracy to commit robbery while armed with a deadly weapon. We presume the text of the Information is correct. In any event, the inconsistency is irrelevant to this appeal.

6. Because the trial court limited its certification for interlocutory appeal to this single issue, and because that is the only issue we reach in this opinion, Moss could still raise the other two issues—the voluntariness of his confession and alleged *Miranda* violations—in a subsequent appeal if he is convicted.

122, 124 (Ind.Ct.App.2008), *reh'g denied.* The record must disclose substantial evidence of probative value that supports the trial court's decision. *Id.* We do not reweigh the evidence, and we will consider conflicting evidence most favorable to the trial court's ruling. *Id.* We will affirm the trial court's ruling on a motion to suppress if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory. *Id.*

The main thrust of Moss' argument is that he was being illegally detained at the time of his initial incriminating statement because (1) his fiancée tried to post the Howard County bond before Moss was questioned about the murder, but Detective Shirey discouraged her from doing so, and Moss was not informed of her attempt before he was questioned, and (2) he was not informed of the existence of the Grant County body attachment and bond until after he was interrogated, and he was therefore denied an opportunity to post bond. There is something to be said for Moss' argument. The trial court found that, between 2:15 and 2:30 p.m., *before* Moss had made any incriminating statements, Detective Shirey had told McCracken that she "couldn't" post bond. The State does not challenge this finding on appeal. We agree with Moss that Detective Shirey's statement to McCracken was misleading. Moreover, it is undisputed that nobody told either Moss or McCracken about the Grant County body attachment and bond until after Moss had incriminated himself. Again, Moss is likely correct that Detective Shirey's conduct was born of a desire to keep Moss in custody for as long as possible.

On the other hand, McCracken never asked Detective Shirey why she "couldn't"

post the Howard County bond, and she never attempted to post it anywhere else, such as the courthouse. If she had done either of those things, she may very well have learned about the Grant County body attachment and bond. Furthermore, there is no evidence that Moss ever invoked his right to offer bail and earn his release, nor is there any evidence that Moss ever asked to stop his interrogation so that he could raise bail. In fact, Moss never even mentioned his bond during his interrogation until after he had already confessed to being involved in the crimes against Smith. Because Moss never asked for an opportunity to post his Howard County bond, his interrogators had no reason to mention the Grant County bond to him.

 In any event, we need not determine the legality of Moss' detention vis-à-vis the two body attachments and bonds, because we agree with the State that the police had an independent basis on which to hold Moss: probable cause to arrest Moss for his involvement in the crimes against Smith.

As Moss himself notes,

> Arrest without a warrant is permissible if, at the time of the arrest, the arresting officer had probable cause to believe Moss had committed a felony.[7] Probable cause exists when, at the time of the event, the officer had knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that Moss committed the criminal act in question.

(Appellant's Br. p. 9) (citing *Collins v. State,* 509 N.E.2d 827, 829–30 (Ind.1987)). Here, the officers had knowledge of the following facts and circumstances:

7. Because of this principle, Moss' claim that "[t]he government's failure to obtain an arrest warrant for Moss is fatal to its probable cause argument" is without merit. (Appellant's Reply Br. p. 6).

- Eyewitnesses told police that Smith was shot by one of two black male intruders during a struggle (Moss and his brother, Brown, are black males).

- Moss' name was brought up as a person who was inside Smith's house when a photo array was shown to different witnesses.

- In 2003, an inmate in the Grant County jail told police that he had heard Moss confess to killing Smith while attempting to rob Smith of marijuana.

- In 2005, Johnson (the grandfather of one of Moss' children) told Marion police that Moss had made incriminating statements about the Smith killing and had said that he was trying to protect his brother.

- On August 11, 2006, the day Moss was arrested, McCracken, Moss' fiancée and the mother of another of Moss' children, told Detective Shirey that Moss had told her that he and Brown had been involved in an attempt to steal drugs from a man, during which Brown struggled with the man and the man was shot and killed. Based on what Moss told her, McCracken had gotten the impression that Moss had done the shooting.

For the reasons below, we conclude that these facts and circumstances would warrant a man of reasonable caution to believe that Moss participated in the attempted robbery and shooting of Smith, thereby providing probable cause to arrest Moss.

■ First, Moss' three alleged confessions to McCracken, Johnson, and the jailhouse informant were consistent with the eyewitness accounts of the crime: two black male intruders and a struggle between Smith and one of the intruders. Second, Moss' name was "brought up" as one of the intruders when a photo array was shown to witnesses. Third, the accounts of Moss' three alleged confessions were consistent with each other. While the credibility of the jailhouse informant is obviously questionable, his statement was consistent with McCracken's account regarding the target of the attempted robbery (drugs). *See Beverly v. State,* 801 N.E.2d 1254, 1262 (Ind.Ct.App.2004) (citing *United States v. Schaefer,* 87 F.3d 562, 566 (1st Cir.1996) ("Courts often have held that consistency between the reports of two independent informants helps to validate both accounts.")), *trans. denied.* Fourth, and most importantly, McCracken's statement was particularly reliable, given that she was incriminating the father of her child and the man she was set to marry. Detective Shirey testified that McCracken had shown "[a] great deal of reluctance" in giving her statement and that "she clearly did not want to get him in any trouble for this." (Tr. p. 23).[8]

Moss stresses the fact that Sergeant Randle testified that he lacked probable

---

8. The State also argues that the statements by McCracken, Johnson, and the jailhouse informant are reliable because they were based on admissions of crime by Moss. Specifically, it states: "The basis of the knowledge of all three individuals was [Moss], presumably not a person likely to confess to an attempted robbery and murder that he did not commit. Logically, admissions of crime carry their own indicia of credibility." (Appellee's Br. p. 8). It appears as though the State has gotten its wires crossed. Its case citations—*Robinson v. State,* 888 N.E.2d 1267, 1270 (Ind.Ct. App.2008), and *Peterson v. State,* 674 N.E.2d 528, 537 (Ind.1996)—stand for the proposition that an informant's credibility is bolstered when the informant, in the course of inculpating the defendant, makes a statement against his *own* penal interests, *i.e.,* admits to criminal conduct. For example, McCracken's statement about Moss' alleged confession would have been even more reliable if she had claimed that she was also involved in the crimes against Smith. None of the three informants in this case made any statements against their own penal interests.

cause to arrest Moss until Moss made his initial incriminating statement. However, our supreme court has held that "probable cause for arrest may exist even though a police officer's subjective evaluation of a situation leads him to the conclusion that he did not possess enough information to establish probable cause at a particular time." *Roberts v. State*, 599 N.E.2d 595, 598 (Ind.1992), *reh'g denied*. In short, "[a] police officer's subjective belief as to whether he has probable cause to arrest a defendant has no legal effect." *VanPelt v. State*, 760 N.E.2d 218, 223 (Ind.Ct.App. 2001), *trans. denied*. We find the evidence above to be sufficient to establish probable cause, and Sergeant Randle's opinion to the contrary has no legal effect.

Finally, while it is possible that a jury might acquit Moss if presented only with the evidence the officers had before Moss' confession, that is not the issue before us. "The evidence required to establish guilt is not necessary for probable cause for an arrest to exist." *Roberts*, 599 N.E.2d at 598. "Probable cause exists when, at the time of arrest, the arresting officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the defendant committed the criminal act in question." *Collins*, 509 N.E.2d at 830.

While we commend Sergeant Randle for his caution and his desire to gather further evidence before arresting Moss, we find, as a matter of law, that the officers had sufficient evidence to provide probable cause even before Moss made his initial incriminating statement. As such, even if Moss is correct that his detention was not justified by the two body attachments and bonds, he was still legally detained based on probable cause to believe that he committed, or was an accomplice to the commission of, the crimes against Smith. Therefore, we affirm the trial court's denial of Moss'

motion to suppress and remand this cause to the trial court for further proceedings.

*CONCLUSION*

Based on the foregoing, we conclude that the trial court's denial of Moss' motion to suppress was supported by sufficient evidence.

Affirmed and remanded.

BAILEY, J., and BRADFORD, J., concur.