USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1950 UNITED STATES, Appellee, v. ABOUBACAR DIALLO, Defendant, Appellant. _____________________ No. 93-1951 UNITED STATES, Appellee, v. AMADOU DIARRA, Defendant, Appellant. ___________________ No. 93-2147 UNITED STATES Appellee, v. MOHAMED SOUARE, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ ____________________ Before Selya and Cyr, Circuit Judges, ______________ and Pettine,* Senior District Judge. _____________________ ____________________ Francis R. Williams, by Appointment of the Court, for appellant ___________________ Mohamed Souare. William J. Murphy, by Appointment of the Court, for appellant __________________ Amadou Diarra. Damon M. D'Ambrosio, by Appointment of the Court, for appellant ___________________ Aboubacar Diallo. Zechariah Chafee, Assistant United States Attorney, with whom _________________ Edward J. Gale, United States Attorney, was on brief for appellee. ______________ ____________________ July 14, 1994 ____________________ _____________________ *Of the District of Rhode Island, sitting by designation. PETTINE, Senior District Judge, Defendants PETTINE, Senior District Judge _____________________ Mohamed Souare, Aboubacar Diallo and Amadou Diarra were convicted under a two-count indictment for possession of heroin with intent to distribute and conspiracy to possess heroin with intent to distribute in violation of 21 U.S.C. 841(a)(1) and 846 (1988). Defendants Diarra and Diallo appeal the district court's denial of their motion to suppress evidence recovered after their arrests. Defendant Souare also appeals, arguing that the district court erred in denying his motion for a separate trial. For the reasons stated below, we affirm the district court. I. Background __________ In early October 1992, Detective Thomas Verdi of the Providence Police Department received information from a confidential informant. The informant told Detective Verdi that three African men had recently set up a heroin sales operation at 136 Harrison Street in Pawtucket, Rhode Island. The informant told police that the men were part of an African heroin ring based in New York City. The informant pointed out the three men involved in the heroin operation and said he knew them as "Mohamed," "Lye," and "Sekou" -3- 3 (later determined to be Souare, Diarra and Diallo). Over the next month, Detective Verdi followed the defendants from 136 Harrison Street as they travelled together to various locations in Providence. Detective Verdi arranged for a reliable third party, who was cooperating with the police, to buy heroin from defendant Souare. Defendants Diallo and Diarra were present during this buy. On November 10, 1992, the informant told Detective Verdi that Mohamed had received a large shipment of pure heroin and that Mohamed, Lye and Sekou were to meet a customer for the heroin that night in Providence. At 6:30 p.m. that night, Detective Verdi and Sergeant Pedchenko set up surveillance at 136 Harrison Street. The three defendants, plus a fourth man identified later as Omar Bangoura, came out of the front door of 136 Harrison Street. Diarra, Diallo and Bangoura got into a red Toyota parked next to the building. Souare walked up and down the street, looking around. He apparently did not notice the policemen, returned to the red Toyota, and drove off. Once on the street, Souare drove normally for awhile, then suddenly accelerated, ran two stop signs, and quickly turned right onto a busy street. He then turned left from the right hand lane which required crossing three lanes of traffic, and sped down an entrance ramp to I-95. Detective Verdi, from -4- 4 his previous surveillance of Souare, knew that Souare was familiar with the streets in that area and viewed the unusual driving as an attempt to evade anyone who might be following. Souare turned off at the next exit and turned into the driveway of a house one or two blocks from the exit. Approximately fifteen minutes later, during which time the four men may or may not have entered the house, the men left. This time, Souare was alone in the red Toyota, followed by a blue Ford driven by Diallo with Bangoura in the front passenger seat and Diarra in the rear seat. Souare drove the wrong way up a one-way street, down a deserted street and stopped under a bridge. The blue Ford followed each of these moves and waited under the bridge with the red Toyota. After waiting, the cars returned to I- 95 and drove in the slow lane at 45 miles per hour for several exits. At each exit they passed, they would turn on the turning signals as if they were exiting but then would resume their slow driving. When the two cars finally exited the highway, Sergeant Pedchenko called for uniformed backup to make the arrests. Patrolman Sion answered the call and pulled over the blue Ford at the direction of Sergeant Pedchenko. After Pedchenko and Verdi arrived, the three police officers went -5- 5 to the car and ordered the occupants out. As Diarra got out of the rear seat, he threw a hand-held calculator to the floor. When Sergeant Pedchenko attempted to pat down Diarra, Diarra resisted and pushed away the sergeant. The three men were handcuffed, placed in Patrolmen Sion's car, and driven up the street to a parking lot. Pedchenko and Verdi followed. While in Sion's patrol car, the three men were handcuffed with their hands behind their backs. Sion looked in the mirror and saw that Diarra, in the middle, had turned his back and cuffed hands toward Diallo. Diallo had turned to face Diarra's back and hands. Sion heard the sound of a plastic bag crunching and looked over his shoulder at the men. Diarra was using his hands, behind his back to pull a white plastic bag up out of the front of Diallo's pants. Sion ordered the men to stop but they used their hands to stuff the bags between the seat back and the seat. Sion pulled into the parking lot and the prisoners were taken from the rear seat. The rear seat was pulled up and the police found eleven bags of heroin. At the same time, Souare was pulled over by another surveillance car and arrested. Souare had no heroin in his car or on his person. -6- 6 Prior to trial, defendants Diarra and Diallo filed a motion to suppress the heroin discovered in the car. They argue that they were under arrest when the police handcuffed them at the scene of the car-stop and that the arresting officers did not have probable cause to arrest them. Defendants Souare and Diallo filed motions to sever their trials from the trials of their co-defendants, alleging prejudicial joinder.1 District Judge Ernest Torres denied both motions in oral decisions from the bench. II. Motion to Suppress __________________ Diarra and Diallo contend there was no probable cause to arrest them and that the heroin discovered as a result of the arrests should be suppressed.2 The definition of probable cause is well established and not in dispute in this case. ____________________ 1 Defendant Diallo does not appeal the denial of his motion for a separate trial. 2 There appears to have been some dispute below as to whether the defendants were arrested or merely detained for an investigatory stop at the time they were placed in Sion's car. On appeal, the government seems to accept the fact that the men were under arrest prior to the discovery of the heroin. We therefore will assume that the defendants were under arrest when placed in Sion's car. -7- 7 "[E]very arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." Michigan v. ________ Summers, 452 U.S. 692, 700 (1981). In Illinois v. Gates, _______ ________ _____ 462 U.S. 233 (1983), the Supreme Court held that probable cause should be determined under a "totality-of-the- circumstances" test. In doing so, the Court stated that "probable cause is a fluid concept - turning on the assessment of probabilities in particular factual contexts." Id. at 232. The Court rejected the prior test for probable ___ cause which focused "analysis into two largely independent channels - the informant's 'veracity' or 'reliability' and his 'basis of knowledge.'" Id. at 233. Under the totality- ___ of-the-circumstances test, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id. Further, "[w]here the ___ standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." Ybarra v. Illinois, 444 U.S. 85, ______ ________ 91 (1979). "The quantum of information which constitutes probable cause [is] evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed." Wong Sun v. United States, 371 U.S. 471, 479 ________ _____________ (1963) (citations omitted). "The substance of all the -8- 8 definitions of probable cause is a reasonable ground for belief of guilt. And this means less than evidence which would justify condemnation or conviction." Brinegar v. ________ United States, 338 U.S. 160, 175 (1949) (citations omitted). _____________ See also United States v. Drake, 673 F.2d 15, 17 (1st Cir. ___ ____ _____________ _____ 1982). The existence of probable cause must be determined in light of the information known to the police at the time of the arrest. Maryland v. Garrison, 480 U.S. 79, 85 ________ ________ (1987). "'[T]he existence of probable cause is to be evaluated on the basis of the collective information of the law enforcement officers engaged in a particular investigation." United States v. Curry, 751 F.2d 442, 446 _____________ _____ (1st Cir. 1984), cert. denied sub nom., United States v. _____________________ _____________ Silvestri, 487 U.S. 1233 (1988). See also United States v. _________ ___ ____ ________________ Paradis, 802 F.2d 553, 557 (1st Cir. 1986). It is obvious, _______ therefore, that evidence recovered subsequent to an arrest cannot form the basis of probable cause for that arrest. Maryland v. Garrison, supra, at 85. Thus, we must determine ________ ________ _____ whether the information available to the police prior to the stop of the car supports the district court's finding of probable cause. -9- 9 In making this determination, we do not "conduct a de novo determination of probable cause, but [rather] determine whether there is substantial evidence in the record" to support the district court's finding. United ______ States v. Badessa, 752 F.2d 771, 773 (1st Cir. 1985). "The ______ _______ findings of the district court after a hearing on a pretrial motion to suppress are binding on appeal unless they are clearly erroneous." United States v. Morris, 977 F.2d 677, _____________ ______ 680 (1st Cir. 1992), cert. denied, 113 S. Ct. 1588 (1993). ____________ With these standards in mind, we turn to the district court's decision. The district court described the relevant facts as follows. [The police] had information from a confidential informant who had proven reliable. They had some admitted hearsay testimony from the confidential informant that the three individuals to whom he had made the controlled sale previously were the three Defendants. He had identified the three Defendants as being the individuals involved in the heroin ring, predicted that they were going to make a sale that night and sure enough they appeared together, acted in suspicious manner, drove in a way that was, obviously, calculated to evade surveillance. Tr., Suppression Hearing, 4/30/93 at 51-52. Based on these facts, the district court concluded "if that doesn't add up to probable cause to arrest them, then it's difficult to -10- 10 imagine what does." Id. at 52. These factual findings are ___ not clearly erroneous and thus we must accept them as true. Defendants raise three arguments to the finding of probable cause, all based on purported flaws in the information from the informant. First they argue that there was no corroboration of the informant's tip until after the arrests when the heroin was discovered. We first note that under the standard enunciated in Gates, the police do not _____ have to corroborate every detail of the informant's tip. Secondly, the informant was known to the police to be reliable. Further, the informant correctly reported the location of the three men, the type of car that Souare would be driving and that the three men would be traveling together that night. As the district court stated, the three men did appear together, act suspiciously, and attempt to evade any followers. The district court's factual findings, which we are bound to accept, support a finding of probable cause. Defendants also argue that the informant's tip was not sufficiently detailed to allow the police to rely upon it and was flawed in the details that it did provide. -11- 11 According to defendants, the information was unreliable because the informant stated that there would be three men in a red Toyota when in actuality there were four men in two cars. The inconsistencies between the informant's information and the reality of the situation were not of such importance that the information could be concluded to be incorrect. The informant was correct as to the identities of three of the four men along with the night the activity would take place and one of the vehicles used. "A tipster need not deliver an ironclad case to the authorities on the proverbial silver platter. It suffices if . . . a prudent law enforcement officer would reasonably conclude that the likelihood existed that criminal activities were afoot, and that a particular suspect was probably engaged in them." United States v. Chapdelaine, 616 F. Supp. 522, 526 _____________ ___________ (D.R.I. 1985), aff'd, 795 F.2d 75 (1st Cir. 1986). Such was _____ the case here. The factual findings of the district court are not clearly erroneous and these findings would lead a prudent police officer reasonably to believe that criminal activity was occurring. We therefore hold that probable cause existed to support the arrests and the district court's denial of the motion to suppress is affirmed. -12- 12 III. Motion for a Separate Trial ___________________________ Defendant Souare filed a motion for a separate trial prior to the beginning of the trial. The district court denied the motion and all three defendants were tried together. Souare appeals, alleging that he suffered undue prejudice from the joint trial. In denying the motion to sever, the district court made the following observations. [T]here hasn't been any satisfactory reason given as to why severance should be granted in this case. . . . There has been no suggestion as to any reason why these cases should be severed and there are a lot of reasons why they ought to be joined. One, as [the government] has just pointed out, the three Defendants are charged with conspiracy and generally speaking coconspirators are tried together. Secondly, they are all charged with possession involving the same incident. And to sever these cases would result in a needless duplication of evidence. We would in effect have three carbon copies [sic] trials of each other. So the motions to sever will be also denied. Tr., Suppression Hearing, 4/30/93 at 60-61. In reviewing a denial of a motion to sever, we will reverse only upon a showing of an abuse of discretion. United States v. Fusaro, 708 F.2d 17, 25 (1st Cir.), cert. _____________ ______ _____ denied, 464 U.S. 1007 (1983). Abuse of discretion will be ______ -13- 13 found "only where the failure to sever deprives defendant of a fair trial and results in a possible miscarriage of justice." United States v. Cyr, 712 F.2d 729, 735 (1st Cir. _____________ ___ 1983). "Reversal of a conviction on the ground that a district court abused its discretion by denying a motion to sever is extremely rare." United States v. Scivola, 766 _____________ _______ F.2d 37, 41 (1st Cir. 1985). The burden is on the appellant to prove that he suffered from "prejudice greater than that which necessarily inheres whenever multiple defendants . . . are jointly tried." United States v. Walker, 706 F.2d 28, _____________ ______ 30 (1st Cir. 1983). Prejudice in this context "means more than just a better chance of acquittal at a separate trial." United States v. Boylan, 898 F.2d 230, 246 (1st Cir.), cert. _____________ ______ _____ denied, 498 U.S. 849 (1990). ______ Souare bases his allegation of prejudice on a purported disparity of evidence in the cases against his co- defendants Diarra and Diallo and the case against himself. He points out that he was not in the car from which the heroin was recovered nor was any heroin found in his car or on his person. He further argues that the government's case against him was "tenuous at best" and was strengthened by inferences drawn from the evidence against his co- defendants. Beyond the difference in the amount of proof against him and his co-defendants, Souare contends that the -14- 14 case against him was based on different evidence or proof than the cases against Diarra and Diallo. Souare contends that there was no evidence of actual possession of heroin on his part and any case had to be premised upon the unusual driving, the information from the informant, and his association with his co-defendants. Although Souare proceeds to attack the strength of each of these pieces of evidence, such attacks are irrelevant. The government's case against Souare for possession of the heroin rested on a theory of constructive possession: "possession was joint among the three men and . . . Souare exercised dominion and control by knowingly leading the other two men from Pawtucket to Providence." Aple. Br. at 19. Regardless of the strength of this theory, any evidence relating to possession by defendants Diarra and Diallo would need to be introduced against Souare. The same is true for the conspiracy charge. The evidence concerning the activities of defendants Diarra and Diallo was a necessary part of the proof that Souare was a member of the conspiracy. See United States v. Cresta, 825 F.2d 538 (1st ___ _____________ ______ Cir. 1987) (fact that a substantial portion of the evidence is not directly related to the defendant does not make it automatically unlawful to try him with other defendants), -15- 15 cert. denied sub nom., Impemba v. United States, 486 U.S. _____________________ _______ _____________ 1042 (1988). Thus, Souare has not shown that there would be any difference in the evidence presented at the joint trial and the evidence that would have been presented at a separate trial. "[W]here separate trials would have necessarily involved repetitive use of most of the same evidence and same facts, we find no possibility of such an abuse of discretion absent a clear showing of substantial prejudice to the defendant." United States v. Ciampaglia, 628 F.2d _____________ __________ 632, 643 (1st Cir.), cert. denied, 449 U.S. 956 (1980). ____________ Souare has not demonstrated that the evidence would differ between the joint trial and separate trials, nor has he made a clear showing of substantial prejudice. We can find no abuse of discretion in denying the motion to sever. The decision of the district court is therefore AFFIRMED. -16- 16