COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley, Petty,
           Beales, Powell and Alston
Argued at Richmond, Virginia


MALACHI ANTONIO BYRD
                                                          OPINION BY
v.      Record No. 2197-08-1              JUDGE ELIZABETH A. McCLANAHAN
                                                        FEBRUARY 1, 2011
COMMONWEALTH OF VIRGINIA

                        UPON A REHEARING EN BANC

            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                            William R. O'Brien, Judge

        T. Gregory Evans (Office of the Public Defender, on brief), for appellant.

        Jennifer C. Williamson, Assistant Attorney General (Kenneth T.
        Cuccinelli, II, Attorney General, on brief), for appellee.


        The trial court found Malachi Antonio Byrd guilty of possession of cocaine and

possession of a firearm by a convicted felon.  On appeal, Byrd argues the trial court erred in

denying his motion to suppress evidence of these crimes because the police, acting on

information from a confidential informant, lacked probable cause to stop and search his vehicle,

in violation of his Fourth Amendment rights.  A panel majority of this Court agreed with Byrd

and reversed the decision of the trial court.  Byrd v. Commonwealth, 55 Va. App. 742, 759, 689

S.E.2d 769, 777 (2010).  We granted the Commonwealth's petition for rehearing *en banc* and

stayed the mandate of the panel decision.[1]  Upon rehearing *en banc*, we affirm the trial court.

---

[1] While ruling in Byrd's favor on his challenge to the denial of the suppression motion,
the majority panel ruled that his challenge to the trial court's denial of his motion to strike the
firearm charge was waived under Rule 5A:18; Byrd has abandoned that challenge in this
rehearing *en banc*.

I.

"'In reviewing the denial of a motion to suppress based on the alleged violation of an individual's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth.'" Lawson v. Commonwealth, 55 Va. App. 549, 552, 687 S.E.2d 94, 95 (2010) (quoting Ward v. Commonwealth, 273 Va. 211, 218, 639 S.E.2d 269, 271 (2007)). That includes evidence from both the suppression hearing and the trial. Emerson v. Commonwealth, 43 Va. App. 263, 272, 597 S.E.2d 242, 247 (2004).

Virginia Beach Police Officer William Canada testified that at approximately 1:00 a.m., he received a tip from a known reliable informant that a drug transaction involving crack cocaine was going to take place within the next thirty minutes in the parking lot of the Harris Teeter grocery store located at 29th and Arctic Boulevard in Virginia Beach. Identifying two of the subjects, the informant told Canada that a black male and a black female would be pulling into the parking lot in a green four-door vehicle. The informant also told Canada that the female would be driving the vehicle and that the male passenger would be armed with a firearm. The grocery store, according to Canada, was located in what was known to be a high drug crime area where numerous narcotics arrests had been made.

Canada testified that he had worked with the informant for approximately eighteen months. The informant had been a "confidential informant" for six months prior to the incident at issue; but he had also been "a source of information" for a year prior to completing the process of becoming a confidential informant. Canada stated that during that time the informant had "provided very reliable information," which generally involved narcotics-related criminal activity. This information "result[ed] in over twelve search warrants, seizures of large quantities of money, drugs [and] firearms," along with a number of arrests. Furthermore, Canada indicated

that all of the information he had received from the informant over the eighteen-month period had proven to be true.

Accordingly, Canada explained, based on the informant's latest tip, he and two other police officers proceeded immediately to conduct surveillance on the Harris Teeter parking lot. Consistent with the tip, the officers observed a green four-door vehicle pull into the Harris Teeter parking lot at 1:35 a.m. A black female was driving the vehicle, and a black male, later identified as Byrd, was in the passenger seat. The driver parked the car and, approximately a minute later, the officers saw Byrd exit the vehicle and enter the grocery store—in variance with what the informant had expected, having indicated that a drug transaction would take place in the parking lot. Less than two minutes later, however, Byrd exited the store empty-handed. He then returned to the waiting vehicle, and the two suspects drove out of the parking lot.

Shortly thereafter, the officers stopped and searched the vehicle in which Byrd was a passenger and recovered a loaded nine-millimeter handgun from the glove compartment, leading to Byrd's arrest for possession of a firearm as a convicted felon. Then at the police station, one of the officers discovered that Byrd was carrying a bag of cocaine on his person, resulting in his drug charge.

In a pretrial motion, Byrd moved to suppress evidence of the firearm and the cocaine. Byrd argued the police did not have probable cause to stop and search his vehicle because the confidential informant's tip was not reliable. After hearing the testimony of Officer Canada, and the corroborating testimony of Officer Jason Gregory, one of the other officers at the scene, the trial court denied Byrd's motion. The court concluded that the police had probable cause to stop and search Byrd's vehicle in light of the "totality of the circumstances." The court specifically pointed to both the informant's history of providing reliable information to the police and the details of the informant's accurate predictions of Byrd's future conduct on the night in question.

II.

When this Court reviews a trial court's denial of a motion to suppress, the burden is upon the defendant to show that the ruling constituted reversible error. Jones v. Commonwealth, 277 Va. 171, 177-78, 670 S.E.2d 727, 731 (2009); McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*). The ultimate question of probable cause in a Fourth Amendment challenge, as here presented, involves issues of both law and fact. Id. at 197-98, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 691 (1996)). Thus, "we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citation omitted).

Probable cause, as the term implies, "'exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place,'" Jones, 277 Va. at 178, 670 S.E.2d at 731 (quoting United States v. Grubbs, 547 U.S. 90, 95 (2006)) (internal quotation marks omitted), as determined from the totality of the circumstances, Barnes v. Commonwealth, 279 Va. 22, 34, 688 S.E.2d 210, 217 (2010) (citations and internal quotation marks omitted). This means the probable cause standard "does not 'demand any showing'" that a police officer's belief regarding criminal activity be "'correct or more likely true than false.'" Slayton v. Commonwealth, 41 Va. App. 101, 106, 582 S.E.2d 448, 450 (2003) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). An informant's information thus may provide probable cause for an arrest or a search "'so long as the officer has reasonable grounds to believe the [information] is true.'" McGuire v. Commonwealth, 31 Va. App. 584, 594-95, 525 S.E.2d 43, 48 (2000) (quoting Illinois v. Gates, 462 U.S. 213, 242 (1983)). See United States v. Humphries, 372 F.3d

653, 659 (4th Cir. 2004) ("quantum of facts required" for establishing probable cause is same for arrest or search (citing 2 Wayne R. LaFave, Search & Seizure § 3.1(b) (3d ed. 1996))).

In Gates, the United States Supreme Court adopted a totality-of-the-circumstances analysis for assessing an informant's information, consistent with the analysis that "traditionally has guided probable-cause determinations." Gates, 462 U.S. at 233. Gates directs courts to assess whether officers acting on an informant's tip had probable cause "by examining all of the facts known to officers leading up to the arrest [or search], and then asking 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer,' amount to probable cause." United States v.White, 549 F.3d 946, 950 (4th Cir. 2008) (quoting Ornelas, 517 U.S. at 696). In other words, the facts "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Gates, 462 U.S. at 232. Under this standard, courts recognize that "a police officer may draw inferences based on his own experience in deciding whether probable cause exists," Ornelas, 517 U.S. at 700, including inferences "that might well elude an untrained person," United States v. Cortez, 449 U.S. 411, 418 (1981).

The Gates Court adopted this totality-of-the-circumstances approach to analyzing an informant's tip as it abandoned the "'two-pronged test'" derived from its decisions in Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), which "direct[ed] analysis into two largely independent channels—the informant's 'veracity' or 'reliability' and his 'basis of knowledge.'" Gates, 462 U.S. at 228-34. As the Gates Court explained, a totality-of-the-circumstances analysis "permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip," whereas the "'two-pronged test' [had] encouraged an excessively technical dissection of informants' tips." Id. at 234.

From a practical standpoint, the Court reasoned:

> [P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons. As we said in Adams v. Williams, 407 U.S. 143, 147 (1972): "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." Rigid legal rules are ill-suited to an area of such diversity.

Id. at 232. The Court went on to characterize its totality-of-the-circumstances approach to assessing an informant's tip as a "flexible, common-sense standard . . . [that] serves the purpose of the Fourth Amendment's probable-cause requirement." Id. at 239. See Derr v. Commonwealth, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991) (stating that Gates "reject[ed] a hypertechnical, rigid, and legalistic analysis of probable cause determinations"); Robinson v. Commonwealth, 53 Va. App. 732, 738, 675 S.E.2d 206, 210 (2009) (explaining that, under Gates, we are not bound by any "technical standard concerning informant reliability"); McGuire, 31 Va. App. at 595, 525 S.E.2d at 48-49 ("Gates opened the door for police officers to establish the credibility of an informer in a variety of ways . . . ." (citation and internal quotation marks omitted)).

Under Gates, the informant's "'reliability and basis of knowledge'" are still "'highly relevant' factors in the overall totality of the circumstances analysis." Jones, 277 Va. at 179, 670 S.E.2d at 732 (quoting Gates, 462 U.S. at 230). Gates makes clear, however, that these two factors are not "separate and independent requirements to be rigidly exacted in every case." Gates, 462 U.S. at 230. "Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause

determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id. at 233.

Police corroboration of an informant's tip has been "consistently recognized" as a form of such additional or alternative indicia of informant reliability. Id. at 241. In Gates, the Court held that independent police work corroborating certain details of the informant's tip—indeed a tip from an anonymous informant—established probable cause to search the Gateses' automobile and home for illegal narcotics. Id. at 244. The Court reached that conclusion even though the portions of the tip that the police were able to corroborate through their own observations were of "entirely innocent behavior" involving the Gateses' travel plans. Id. at 245 n.13. The Court explained that the tip "relat[ed] not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." Id. at 245. If the informant had access to that type of information "likely obtained from the Gateses themselves, or from someone familiar with their not entirely ordinary travel plans," the Court reasoned, "it was not unlikely that [the informant] also had access to reliable information of the Gateses' alleged illegal activates." Id. While the informant could have learned of the Gateses' travel plans through a "talkative neighbor or a travel agent," the Court acknowledged, it determined that the verified information was enough to establish "a fair probability that the [informant] had obtained his entire story either from the Gateses or someone they trusted. And corroboration of major portions of the [informant's] predictions provide[d] just [that] probability." Id. at 246. See id. at 242-43 (describing Draper v. United States, 358 U.S. 307 (1959), as "classic case" of value of police corroboration of informant's tip where no basis of knowledge for tip was given) (Draper discussed at length in section III.D., *infra*).

III.

Byrd argues the police lacked probable cause to stop and search his vehicle because the informant, while reliable, was not "unusual[ly]" or "extraordinarily" reliable, the informant's tip to the police regarding Byrd's criminal activity lacked sufficient detail and was inaccurate, and the informant did not provide the police with any "basis of knowledge" for the tip. Thus, Byrd concludes, the trial court erred in denying his motion to suppress the evidence supporting his drug and firearm-related convictions. We do not agree. Viewing the totality of the circumstances presented to the police officers at the time they stopped and searched Byrd's vehicle, we conclude the police had probable cause to believe Byrd was engaged in criminal activity and contraband would be discovered in his vehicle. The trial court, therefore, did not err in denying Byrd's suppression motion.

A.

First, based on the informant's past performance, there was a "strong showing" of the informant's reliability. Gates, 462 U.S. at 233. The informant provided tips to the police over a period of approximately eighteen months that resulted in the execution of twelve search warrants, seizures of large quantities of money, drugs, and firearms, and a number of arrests. And all of the information that the informant provided to the police during that period proved to be true. Based on this history, Officer Canada described the informant as "very" reliable.

We reject Byrd's argument that we should nevertheless discount the degree of the informant's reliability because there is no evidence the tips led to convictions. As stated in United States v. Johnson, 351 F.3d 254, 259 (6th Cir. 2003), even if "previous successful searches based on [the informant's] statements had not led to successful prosecutions, this would by itself not have thrown any doubt on the reliability or truthfulness of the informant," as the "mere fact that contraband was discovered where he claimed it was going to be discovered is

- 8 -

sufficient indicia of his reliability." See United States v. Angulo-Lopez, 791 F.2d 1394, 1397 (9th Cir. 1986) ("If the informant has provided accurate information on past occasions, he may be presumed trustworthy on subsequent occasions" (citation omitted)); Sexton v. State, 397 A.2d 540, 546 (1979) ("The test for determining the reliability of an undisclosed informant is not his record in aiding arrests or convictions, but whether his information has ever been verified in the past."); People v. Arnold, 527 P.2d 806, 809 (Colo. 1974) (explaining it would be "an undue restriction" on the police to require that the informant's information led to convictions because "[t]he information previously furnished may be in connection with cases not yet tried or may relate to prosecutions dismissed for reasons unrelated to the reliability of the informant's information").

As Professor LaFave explains:

> Courts have consistently held that an informant's track record is sufficiently established by a showing (i) that on one or more prior occasions the informant indicated that a certain object, usually narcotics, but sometimes such other items as stolen property, counterfeit money, or even the body of a homicide victim are concealed at a certain place, and (ii) the information was verified as true by a search which uncovered the specified items at the place indicated. This is a sound result, for the fact that evidence was turned up which the informant indicated would be turned up bears very directly upon the informant's credibility. . . . [A]s a general proposition such a showing may be more convincing than an assertion that the informer's prior information led to convictions, for— except in those cases where conviction follows from the single fact of a defendant's possession of a certain object, which the informant may have previously asserted as a fact—a conviction is likely to follow from an accumulation of several facts above and beyond those communicated by the informant.

2 Wayne R. LaFave, Search and Seizure § 3.3(b), at 116-17 (4th ed. 2004) (footnotes and internal quotation marks omitted).

We also reject Byrd's contention that we should view the informant on the lower end of some numerical—and necessarily arbitrary—credibility scale simply because, by comparison, the informant's history of providing information to the police was of a shorter duration and

involved far fewer tips than was the case with the informant in <u>Askew v. Commonwealth</u>, 38 Va. App. 718, 568 S.E.2d 403 (2002). There, the informant had provided tips to the police for three years, leading to over 200 arrests, and had never given unreliable information. <u>Id.</u> at 720, 568 S.E.2d at 404-05. Because the record in this case shows that the informant was, in fact, "very" reliable, our assessment of the informant's reliability, in terms of past performance, need not go any further, as to this part of our review of the "overall reliability" of the informant's tip regarding Byrd. <u>Gates</u>, 462 U.S. at 233.

B.

Second, the informant provided to the police significant details regarding Byrd's predicted conduct on the night in question, nearly all of which were corroborated by the police, thereby bolstering the "'inherent reliability of the informant's information.'" <u>Smith v. Commonwealth</u>, 56 Va. App. 592, 601, 696 S.E.2d 211, 215 (2010) (quoting <u>McGuire</u>, 31 Va. App. at 595, 525 S.E.2d at 49). That is to say, as in <u>Gates</u>, the informant's tip "relat[ed] not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted," which were substantially verified by independent police work. <u>Gates</u>, 462 U.S. at 245.

Approximately thirty-five minutes before Byrd's arrival at the Harris Teeter grocery store located at 29th and Arctic Boulevard in Virginia Beach, the informant predicted in his report to Canada that Byrd, identified as a black male, would be arriving at that location within thirty minutes, that he would be a passenger in a green four-door vehicle, that he would be accompanied by a black female, and that the female would be driving the vehicle. The informant also indicated the two subjects would be involved in a drug transaction taking place in the grocery store parking lot. Through their own investigation, Canada and two other officers then

- 10 -

verified all but the last piece of information, as Byrd quickly entered and exited the grocery store, empty-handed, rather than engaging in a transaction in the grocery store parking lot.

Contrary to Byrd's contention, the fact there was a discrepancy with this last piece of the informant's predictive information does not mean that the police should have concluded the tip was unreliable. See United States v. Diallo, 29 F.3d 23, 26 (1st Cir. 1994) (informant's tip was not unreliable just because he had predicted there would be three men in a red Toyota who were going to engage in a drug transaction on a particular night when in actuality there were four men in two cars); United States v. Morales, 923 F.2d 621, 625 (8th Cir. 1991) ("While Morales was not wearing a black T-shirt at the time of arrest as the informant had predicted, he did arrive at the depot at the appointed time in a red pick-up with a white topper accompanied by a woman."). Once again, we are to apply a totality-of-the-circumstances analysis, viewed from the perspective of a reasonable police officer. The police could have reasonably surmised Byrd changed the location of the drug transaction to inside the grocery store subsequent to the time that the informant learned of Byrd's plans and provided the tip to the police. As the First Circuit aptly stated in Diallo, "[a] tipster need not deliver an ironclad case to the authorities on the proverbial silver platter." Diallo, 29 F.3d at 26 (citation and internal quotation marks omitted).

Furthermore, as Gates teaches, the fact that the portion of the informant's predictive information that was corroborated by the police was of "entirely innocent activity" does not diminish its significance. Gates, 462 U.S. at 245 n.13. "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." Id. "[T]he corroboration of minor, innocent details can suffice to establish probable cause." Morales, 923 F.2d at 625 (citation and internal quotation marks omitted). Thus, when the officers evaluated the seemingly innocent details of the corroborating information in conjunction with the

- 11 -

informant's history for truthfulness and reliability, they could have reasonably believed that the uncorroborated portion of the informant's tip, i.e., Byrd's predicted illegal activity, was also correct. When "an informant is right about some things, he is more probably right about other facts . . . including the claim regarding [the suspect's] illegal activity." Gates, 462 U.S. at 244 (internal citation and quotation marks omitted). As we pointed out in Ramey v. Commonwealth, 35 Va. App. 624, 631, 547 S.E.2d 519, 523 (2001) (quoting Alabama v. White, 496 U.S. 325, 332 (1990)), "'[b]ecause only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to have access to reliable information about that individual's illegal activities.'"

## C.

Finally, in addition to the fact that the informant was very reliable and that the informant provided to the police significant details of Byrd's predicted future conduct, nearly all of which was corroborated by the police, the police knew that the location of the predicted drug transaction was a high drug crime area where numerous narcotics arrests had been made. Given the other facts known to the police, this last fact was also one that a reasonable police officer would have been entitled to consider in determining whether probable cause existed. See Ross v. Commonwealth, 35 Va. App. 103, 107, 542 S.E.2d 819, 821 (2001); see also United States v. Broadie, 452 F.3d 875, 883 (D.C. Cir. 2006); United States v. Wadley, 59 F.3d 510, 512 (5th Cir. 1995); United States v. Hughes, 898 F.2d 63, 64 (6th Cir. 1990).

## D.

The above-described circumstances supporting the police officers' probable cause determination to stop and search Byrd's vehicle are as compelling, if not more so, as those presented in Draper v. United States, 358 U.S. 307 (1959), which the Gates Court described as the "classic case on the value of corroborative efforts" by the police when acting on an

informant's tip where, as here, the informant did not state the basis for his information. Gates, 462 U.S. at 242. In Draper, the informant had provided the police with information for about six months and had always been "'accurate and reliable.'" Draper, 358 U.S. at 309. The informant told the police that Draper would arrive by train at a particular location, on one of two days, possessing three ounces of heroin. The informant also gave a detailed description of Draper, consisting of his physical attributes, the clothing he would be wearing, the bag he would be carrying, and the fact that he "habitually 'walked real fast.'" Id. After failing to observe anyone fitting Draper's description at the train station on the first day, the police returned the second day and did observe an individual who fit the description in terms of physical appearance, attire, bag, and gait. Id. at 309-10. Having verified this information, but without knowing "whether [Draper] had accomplished his mission and had the three ounces of heroin on his person or in his bag," the police arrested Draper. Id. at 313. The Supreme Court held that the police had probable cause to arrest Draper based on the verified portion of the informant's information, reasoning that "surely" the police "had 'reasonable grounds' to believe that the remaining unverified bit of [the informant's] information—that Draper would have the heroin with him— was likewise true." Id.[2]

_____

[2] See also United States v. Gagnon, 373 F.3d 230, 232-38 (2d Cir. 2004) (informant reported that Gagnon would be arriving at a certain date, time, and location, driving a tractor trailer with the name "Lanfort" on the side of the trailer, for the purpose of receiving the shipment of marijuana located in the informant's trailer); United States v. Marchena-Borjas, 209 F.3d 698, 699-700 (8th Cir. 2000) (informant reported that a named Hispanic male was in possession of methamphetamine at a certain trailer park, and would be delivering it at a certain time to a certain location, driving a silver Oldsmobile mini-van with Nebraska license plates); United States v. Miller, 925 F.2d 695, 696-700 (4th Cir. 1991) (informant reported that Miller would be arriving at the bus station on a certain day wearing blue jeans and a blouse, carrying a brown tote bag, and would be in possession of drugs); Williams v. Commonwealth, 147 S.W.3d 1, 6-8 (Ky. 2004) (informant reported that a black male, who would be in possession of crack cocaine, would be driving a blue El Camino to a certain apartment complex and picking up another black male); State v. Abbott, 83 P.3d 794, 796-98 (Kan. 2004) (informant reported that Abbott would be traveling in a two-tone van to a certain location, giving the date and time, to purchase methamphetamine); State v. Munson, 594 N.W.2d 128, 132-37 (Minn. 1999)

Commenting further on <u>Draper</u>, the Supreme Court in <u>Gates</u> stated that it was "perfectly reasonable" that "all of the corroborating detail established in <u>Draper</u> was of entirely innocent activity." <u>Gates</u>, 462 U.S. at 245 n.13. After reiterating that probable cause only requires "a probability or substantial chance of criminal activity," the Court explained that "[b]y hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens' demands." <u>Id.</u>

IV.

For these reasons, we hold the police had probable cause to stop and search Byrd's vehicle based on the totality of circumstances presented to the police at that time. To hold otherwise would require that we apply an overly rigorous and legalistic definition of probable cause, contrary to the teaching of <u>Gates</u> and its progeny. The trial court, therefore, did not err in denying Byrd's suppression motion, and his convictions are thus affirmed.

<u>Affirmed.</u>

---

(informant reported that "in 1 1/2 to 2 hours a rented, green 1996 'Bronco or Jeep type vehicle' with Minnesota license plates" would arrive at a certain location occupied by three African-American males, and the vehicle would contain a large quantity of crack cocaine); <u>Commonwealth v. Bakoian</u>, 588 N.E.2d 667, 668-72 (Mass. 1992) (informant reported that Bakoian and another named individual, traveling in a black Thunderbird with a beige roof bearing a Massachusetts license plate, would "soon" arrive at a certain location with a shipment of heroin).

Humphreys, J. with whom Frank and Alston, JJ., join, dissenting.

I respectfully dissent from the majority's holding that the police officers involved in this case had probable cause to believe that Byrd was engaged in criminal activity and that contraband would be discovered in his vehicle based on the confidential informant's tip. In my view, the majority reaches this conclusion in contravention of this Court's previous and long-standing application and analysis of the law in this area. See Robinson v. Commonwealth, 53 Va. App. 732, 675 S.E.2d 206 (2009); Byrd v. Commonwealth, 50 Va. App. 542, 651 S.E.2d 414 (2007); Askew v. Commonwealth, 38 Va. App. 718, 568 S.E.2d 403 (2002); Russell v. Commonwealth, 33 Va. App. 604, 535 S.E.2d 699 (2000); McGuire v. Commonwealth, 31 Va. App. 584, 525 S.E.2d 43 (2000).

While the majority is certainly correct that most courts, including those of the Commonwealth, no longer apply the two-part Aguilar-Spinelli test in analyzing whether the police have probable cause based on a confidential informant's tip, the two factors of the reliability or veracity of the informant AND the basis of the informant's knowledge of impending criminal activity are still relevant factors that must be considered in any constitutional analysis under the totality-of-the-circumstances test of Illinois v. Gates, 462 U.S. 213, 230 (1983). "When a confidential informant provides the basis for probable cause, there are two considerations that are particularly relevant to our analysis: (1) the veracity or reliability of the informant and (2) the informant's basis of knowledge." Byrd, 50 Va. App. at 551, 651 S.E.2d at 419 (citing Gates, 462 U.S. at 230); see also Robinson, 53 Va. App. at 738-40, 675 S.E.2d at 209-11; Askew, 38 Va. App. at 723, 568 S.E.2d at 406; Russell, 33 Va. App. at 610-11, 535 S.E.2d at 702; McGuire, 31 Va. App. at 595-96, 525 S.E.2d at 48.

> The reliability and basis of knowledge of an informant are not independent elements that must be proved in order to find probable cause, Polston v. Commonwealth, 24 Va. App. 738, 744, 485 S.E.2d 632, 635 (1997), but instead "'are better understood as

- 15 -

> relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" Byrd, 50 Va. App. at 552, 651 S.E.2d at 419 (quoting Gates, 462 U.S. at 233).

Robinson, 53 Va. App. at 738, 675 S.E.2d at 209; see also United States v. Quezada-Enriquez, 567 F.3d 1228, 1233 (10th Cir. 2009); United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004); United States v. Pasquarille, 20 F.3d 682, 687 (6th Cir. 1994); Carter v. United States, 729 F.2d 935, 939 (8th Cir. 1984); Polston, 24 Va. App. at 744-45, 485 S.E.2d at 635.

> If, for example, a particular informant is known for the *unusual* reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip.

Gates, 462 U.S. at 233 (emphasis added).

In short, rather than the two-pronged Aguilar-Spinelli test which required that *both* a minimum level of veracity or reliability of the informant *and* minimal level of reliability of the information itself based upon the source of the informant's basis of knowledge be reached before probable cause could be found, Gates adopted a sliding scale based upon the totality of the circumstances which still required a consideration of both factors. The Gates totality-of-the-circumstances approach provides that probable cause could be supplied by an informant with little or no previous track record of reliability provided the basis of the informant's knowledge was first-hand or otherwise was so detailed as to lead any reasonable person to the conclusion that it was accurate, and conversely that an *unusually* reliable informant could provide probable cause of criminal activity despite an absence of specific information regarding the source of the informant's knowledge. While acknowledging this principle, the majority nevertheless holds that as long as an informant meets some minimum level of

reliability, any lack of precision in the information provided, such that it may apply to any number of people, is now irrelevant to a constitutional analysis. Thus, any lack of details that would indicate that the informant's knowledge was acquired first-hand rather than through hearsay or any failure to supply a name or description of a suspect more detailed than the race, gender, and the color of a vehicle in a very public location, as reflected in this record, are now apparently also of no constitutional moment.

"In 'applying the totality-of-the-circumstances analysis,' the [United States] Supreme Court has 'consistently recognized the value of corroboration of details of an informant's tip by independent police work.'" McGuire, 31 Va. App. at 594, 525 S.E.2d at 48 (quoting Gates, 462 U.S. at 241); see also United States v. Coffee, 434 F.3d 887, 892 (6th Cir. 2006) (holding a particularly reliable informant tip with a high degree of reliability and corroboration of information supported probable cause). When police corroboration supplies "the other indicia of reliability," this Court has held the information provided is such that the informant "'could not have made such accurate and detailed prediction of future events without personal or inside knowledge of the suspect's activities.'" Robinson, 53 Va. App. at 740, 675 S.E.2d at 210; see also Byrd, 50 Va. App. at 553, 651 S.E.2d at 419-20 ("[A]lthough the informant does not explicitly claim personal knowledge, his tip may be 'so detailed as to raise an inference either of personal observation or of acquisition of the information in a reliable way.'" (quoting McGuire, 31 Va. App. at 595, 525 S.E.2d at 49)). In addition, a constitutionally sufficient "tip" should provide "a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." Gates, 462 U.S. at 245; see also United States v. Tuter, 240 F.3d 1292, 1295 (10th Cir. 2001) (finding an anonymous tip was insufficient to provide probable cause because it did not provide details regarding future behavior or actions sufficient to test informant's knowledge or credibility, there

was no evidence of basis of knowledge, and police only corroborated general information); Pasquarille, 20 F.3d at 687 (concluding that the anonymous tip provided probable cause where the informant provided sufficient information to support their basis of knowledge and detailed description of the transaction); United States v. Mendonsa, 989 F.2d 366, 369 (9th Cir. 1993) (holding the officer lacked probable cause based on informant's tip because the officer corroborated only innocent facts without verifying predictions of future activity); Byrd, 50 Va. App. at 553, 651 S.E.2d at 420 (finding the officers did not have probable cause based on informant's tip which lacked basis of knowledge, details of future events demonstrating personal or inside knowledge, and a great history of reliability). However, where the informant is known for his *unusual* degree of reliability, confirmation of "illicit or predictive details" has not been required in light of the totality of the circumstances. See United States v. Riley, 351 F.3d 1265, 1268 (D.C. Cir. 2003) ("With all factors being relevant to a unitary inquiry under the 'totality of the circumstances analysis,' a *high degree* of reliability makes it unnecessary to demand confirmation of illicit or predictive details." (emphasis added)).

In light of the fact that the record in this case does not provide a basis of the informant's knowledge, the question of whether the police officers had probable cause to believe that Byrd was engaged in criminal activity and that contraband would be discovered in his vehicle at the time he was stopped, ought to turn on whether the deficiency of the basis of knowledge is "'compensated for, in determining the overall reliability of a tip, by a strong showing as to the [unusual reliability of the informant], or by some other indicia of reliability.'" Robinson, 53 Va. App. at 738, 675 S.E.2d at 209 (quoting Byrd, 50 Va. App. at 552, 651 S.E.2d at 419). The majority asserts that the confidential informant in this case was "very reliable" and that there was a "strong showing" as to his reliability such that any further assessment of the informant's reliability in light of past performance is unnecessary. The majority also holds that the minimal

corroboration by the police officers of what it contends are "significant details" of what is clearly innocent activity coupled with the fact that it was a high crime area were "other indicia of reliability" sufficient to overcome the deficiency in the totality of the circumstances of the confidential informant's basis of knowledge. In my view, under a totality-of-the-circumstances analysis, the facts in this case regarding the informant's reliability do not constitute a strong showing of *unusual* reliability nor was the information provided to the officers and that was subsequently corroborated by them significantly detailed predictions of future events such that it was "'additional indicia of reliability.'"[3] Robinson, 53 Va. App. at 738, 675 S.E.2d at 209 (quoting Byrd, 50 Va. App. at 552, 651 S.E.2d at 419).

## I. "Other Indicia of Reliability"

I turn first to the majority's contention that the informant provided significant detail regarding Byrd's predicted conduct. In this case, the informant did not state that he was personally observing the activity nor did he provide such detailed information sufficient "'to raise an inference . . . of acquisition of the information in a reliable way.'" Id. at 739, 675 S.E.2d

---

[3] The thrust of my disagreement with the majority on this point is that the majority would apparently end its analysis with the trial court's factual finding that the informant had been reliable in the past along with police corroboration of a few innocent facts occurring in a "high crime area." This holding sets the bar very low and ignores the remaining constitutional requirement that the totality of the circumstances establishing probable cause must also consider the basis of the informant's knowledge in conjunction with his level of reliability. Since any competent police officer, before applying for a search or arrest warrant, would likely ask an informant for details such officer would be expected to supply to a magistrate or testify to in a suppression hearing, including how the informant knows the incriminating information he is passing along, presumably the basis of this informant's knowledge could have been easily established by the prosecution in this case — it simply was not. I believe we do no service to the public or the law by abandoning the approach used by this Court in a long line of prior cases in examining both the informant's reliability *and* his basis of knowledge in light of the totality of the circumstances when determining whether a confidential informant's tip provides a sufficient basis for probable cause. See Robinson, 53 Va. App. at 738-40, 675 S.E.2d at 209-11; Byrd, 50 Va. App. at 552-55, 651 S.E.2d at 419-21; Askew, 38 Va. App. at 723-24, 568 S.E.2d at 406; Russell, 33 Va. App. at 613-15, 535 S.E.2d at 703-04; McGuire, 31 Va. App. at 595-96, 525 S.E.2d at 49.

at 210 (quoting <u>Byrd</u>, 50 Va. App. at 553, 651 S.E.2d at 240).  The record here is simply silent as to how the informant acquired the information he conveyed to the police.  In addition, unlike the informant in <u>Draper v. United States</u>, 358 U.S. 307 (1959), the information that the informant provided in this case was not "'accurate and detailed predictions of future events'" demonstrating "'personal or "inside" knowledge of the suspect's activities.'"  <u>Robinson</u>, 53 Va. App. at 740, 675 S.E.2d at 210 (quoting <u>Byrd</u>, 50 Va. App. at 554, 651 S.E.2d at 420).  My departure from the majority is not on the basis that the evidence corroborated was "innocent activity."  Rather, it is on the basis that the informant did not provide significant detail, as the majority alleges, from which it could be determined he had inside information of criminal activity.  <u>See</u> <u>United States v. Bynum</u>, 293 F.3d 192, 206 (4th Cir. 2002) ("[T]he Supreme Court's cases on corroboration suggest that partial corroboration of an informant's tip supports the reliability of the tip's unverified allegations of criminal activity to the extent that the corroboration shows that the informant has inside information about the subject of the tip.").[4]

---

[4] The majority cites to <u>United States v. Diallo</u>, 29 F.3d 23 (1st Cir. 1994), and <u>United States v. Morales</u>, 923 F.2d 621 (8th Cir. 1991), in support of its contention that every piece of predictive information provided does not need to be corroborated by the police in order for them to conclude that the tip was reliable.  While every piece of information provided does not need to be corroborated, the information that is corroborated still needs to support the conclusion that the informant has inside information.  Unlike in this case, the informant in both cases cited provided significant detailed information to which the police could turn to in corroborating the informant's tip to support the conclusion that they had inside information, and had probable cause based on the totality of the circumstances.

In <u>Diallo</u>, although the police did not corroborate every piece of information, the court noted that the informant had been correct about the identity of three of the four individuals, the location, the fact that they would be traveling together, and one of the vehicles used.  In <u>Morales</u>, the informant had provided the officer with a detailed description of the defendant such as his height, weight, race, and age, and further provided what he would wear, where he would arrive, when he would arrive, what vehicle he would arrive in, what color of bag he would be carrying, and that a lady would accompany him.  The police corroborated all of the facts except for the fact that defendant would be wearing a black t-shirt and that he had cocaine on him.  The discrepancies in both the cited cases were minor compared to the amount of information the informant provided and the totality of the circumstances.

Unlike <u>Diallo</u> and <u>Morales</u>, in this case, the informant supplied no information regarding identity or a description detailed enough to focus probable cause on a specific individual.

In Draper, the informant provided significant details of future events. The informant predicted the location where Draper would be on one of two specific dates, the location he was coming from, the mode of transportation, a detailed physical description of Draper, the specific clothing he would be wearing, the exact description of the bag he would be carrying, the manner in which he would be walking, and the fact that he would be carrying heroin. 358 U.S. at 309-10, 312-13. The police then corroborated all of the facts on the second date provided by the informant except for whether Draper had the heroin on him. Id. at 310, 313. On the basis that every other bit of information provided by the informant had been personally verified, the Supreme Court held that the officers had probable cause to believe that an offense had been or was being committed. Id. at 313.

Unlike the significant amount of detailed information provided in Draper, the information that the informant provided in this case was merely general information such as the appellant's gender and race, his location as the passenger in a vehicle, the color of the four-door vehicle, the gender and race of the driver, the location, and the fact that a drug transaction would take place in the parking lot in thirty minutes. The informant also predicted that the appellant would be armed. However, the informant did not provide specific physical or clothing descriptions of either individual, nor did he provide their names or any other means of singling them out from other African-American grocery shoppers. The informant also did not provide any detailed description of the car other than that it was a "green four-door vehicle." In short, the descriptive information provided was hardly "'so detailed as to raise an inference either of personal observation or of acquisition of the information in a reliable way.'" Byrd, 50 Va. App. at 553, 651 S.E.2d at 419-20 (quoting McGuire, 31 Va. App. at 595, 525 S.E.2d at 49).

The officers in this case corroborated the generic description of the vehicle, individuals, and location prior to arresting appellant – a task easily accomplished since any large grocery

- 21 -

store such as a Harris Teeter in a large city such as Virginia Beach is likely patronized by any number of African-American couples, at least some of whom likely drive green four-door automobiles. Yet, and significantly for me, the officers did not corroborate the information regarding an actual drug transaction, including the time frame and location in which it was supposed to have taken place, nor did they observe any meeting with a third party in the parking lot or observe anything that actually took place inside the grocery store that might have been consistent with a drug transaction.

In short, the only information provided by the informant that was in any way corroborated by the police officers before seizing the appellant was that he was part of an African-American couple who drove a green four-door vehicle into a grocery store parking lot. I would hold that this information was lacking in sufficient detail as to demonstrate inside knowledge of criminal activity on the part of the informant. Thus, I find the facts in this case considerably less compelling than those in Draper, United States v. Diallo, 29 F.3d 23 (1st Cir. 1994), or United States v. Morales, 923 F.2d 621 (8th Cir. 1991), that were so detailed and specific as to enable police officers to verify the exact individual they were looking for in the midst of a public place. Draper, 358 U.S. at 312-13; see also Tuter, 240 F.3d at 1295 (finding police lacked probable cause based on an anonymous tip where the information police corroborated was innocent, innocuous information about the defendant's appearance, residence, car, and child); State v. Raheem, 464 So. 2d 293, 296-97 (La. 1985) (holding the officer lacked probable cause based on a known informant's tip where the officer corroborated the defendants were at the location in the specific vehicle with Michigan plates, but did not observe anything suspicious or criminal in nature); State v. Sweedland, 721 N.W.2d 409 (S.D. 2006) (finding the informant's tip lacked probable cause where the informant did not give an explicit and detailed account of the event and the officer corroborated only innocuous facts such as a license plate

number, the direction of travel, and the gender of the four occupants); Byrd, 50 Va. App. at 555-56, 651 S.E.2d at 421 (holding the officers did not have probable cause based on informant's tip which did not provide verifiable details that were not known to the public, and assertions that defendant was engaged in criminal activity along with a physical description and geographic location).

Further, the majority's contention that the police could have reasonably surmised that Byrd changed the location of the drug transaction from the parking lot to inside the grocery store does not comport with either the informant's tip or with what the police officers actually observed prior to stopping Byrd. The officers observed two individuals arrive at the Harris Teeter, park in the parking lot, Byrd get out of the vehicle after a few minutes, go into the store, and come out less than two minutes later without anything in his hands. None of the officers observed what took place in the store, nor is there anything in the record establishing that Byrd had in fact not made a purchase or otherwise conducted legitimate business in the store. Thus, the time spent in the store outside of the officers' observation further diminishes the "degree of suspicion that attaches to particular type of noncriminal acts." Gates, 462 U.S. at 245 n.13.

Because the tip provided no basis of knowledge through the provision of such an accurate and detailed prediction of future events that the inference can be reached that the informant acquired the information in a reliable way, "the question of probable cause turns on whether, under the totality of the circumstances, the evidence showing the informant's reliability is strong enough to overcome the lack of evidence regarding the informant's basis of knowledge." Byrd, 50 Va. App. at 554, 651 S.E.2d at 420.

## II. Unusual Reliability

With regard to the reliability of the informant, the majority asserts that there was a "strong showing" that he was "very reliable." However, the facts in the record do not support

the conclusion that he was so *unusually* reliable as to conclude that every tip he might make constitutes probable cause to effect an arrest.  In this case, the informant worked with one of the officers as an assigned confidential informant for six months prior to the incident, and as a source of information for a period of time prior to becoming an assigned confidential informant.  Officer Canada testified that the informant had provided very reliable information typically concerning narcotics that resulted in "over twelve search warrants, seizures of large quantities of money, drugs, firearms, people with arrest warrants."  The officer further testified that the information provided during that period of time proved to be true.

However, the record does not reflect that the informant's reliability in this case is *so unusual* that it compensates for the informant's failure to set forth the basis of his knowledge and provides the requisite probable cause.  In this case, nothing in the record shows the overall quantity or quality of the information provided by the informant on those previous occasions.[5]  Nor is there anything in the record before us relating to the degree to which any information previously provided was important in uncovering criminal activity.  In addition, the record does not demonstrate how many of the twelve search warrants led to actual seizure of evidence and arrests effected, or whether the information led to actual convictions.  While this showing is not required, as noted by Professor LaFave in his discussion regarding whether an informant's prior tips have resulted in convictions, "'the fact that the information previously supplied has resulted in convictions would strengthen the reliability factor of the informant.'"  2 Wayne R. LaFave,

---

[5] For example, the record is silent as to whether the twelve search warrants resulted from twelve tips or 100 tips.  The former number might support a conclusion that the informant is 100% reliable while the latter number might suggest that he is only 12% reliable.  As I previously noted in connection with the basis of this informant's knowledge, it may well be that the prosecution could have presented evidence that this informant was so unusually reliable that any tip from him equates to probable cause, but it simply did not do so.

Search and Seizure § 3.3(b), at 116 (4th ed. 2004) (quoting People v. Arnold, 527 P.2d 806, 809 (Colo. 1974)).

Based on the dearth of information in the record concerning the details of this informant's previous record of providing information, I cannot conclude that this informant was "known for the unusual reliability of his predictions of certain types of criminal activities in a locality, [such that] his failure . . . to thoroughly set forth the basis of his knowledge . . . should not serve as an absolute bar to a finding of probable cause based on his tip." Askew, 38 Va. App. at 723, 568 S.E.2d at 406.

### III. High Crime Area

It is reasonable to infer that African-American couples who drive green four-door vehicles may go to a grocery store for the innocent purpose of actually buying groceries. Thus, while the fact that the location of the predicted drug transaction is asserted to be a "high crime area," in light of the general nature of the information provided and that the informant is not so unusually reliable that the basis of his knowledge is irrelevant, this factor in the totality-of-the-circumstances standard does little to provide the police officers in this case with probable cause to support the subsequent stop and search of Byrd's vehicle. See Raheem, 464 So. 2d at 297 ("Consequently, except for their presence in a known drug dealing area and the informant's wholly conclusionary statement that the defendants were selling drugs, no articulated facts connected defendants with unlawful activity."). To hold otherwise, as the majority does, leads to the inevitable conclusion that the information provided by the informant necessarily provided sufficient probable cause to arrest any and every African-American couple occupying a green four-door car who happened to choose the early morning hours of March 27, 2007, to do their grocery shopping at this particular Virginia Beach Harris Teeter store.

## IV. Conclusion

Under the totality of the circumstances reflected in this record, I would hold that the informant's information did not provide officers with probable cause to stop and search Byrd's vehicle. All we have in this case is an informant who failed to provide the basis of his knowledge that Byrd would be involved in a drug transaction, lack of such detailed information to raise the inference that the informant obtained the information in a reliable way, and an informant who is not so unusually reliable that we should overlook the lack of any basis of knowledge for his tip. Accordingly, I would reverse the decision of the trial court and remand for a new trial.